## CLEVELAND, C., C. & ST. L. RY. CO. v. TARTT.

(Circuit Court of Appeals, Seventh Circuit. December 14, 1894.)

No. 129.

1. DEATH BY WRONGFUL ACT—PLEADING—NEGLIGENCE.

In an action for death by wrongful act, an allegation that the deceased was killed by reason of defendant's "gross and reckless and wanton negligence" does not amount to a charge that the killing was willfully done.

2. RAILROAD COMPANIES—INJURIES TO PERSONS ON TRACK—LICENSE.

One who is killed by a train while walking along the track for his own convenience without any invitation from the railroad company, although it has permitted others to walk along it, is at most a mere licensee, for whose death no recovery can be had unless it was caused willfully, or by negligence so gross as to imply willfulness.

3. EVIDENCE—ORDINANCE—PROOF OF PUBLICATION.

Under Starr & C. Ann. St. Ill. c. 24, § 66, which declares that "all ordinances and the date of publication thereof may be proven by the certificate of the clerk under the corporation seal," a copy of an ordinance so certified to is admissible in evidence without proof of its publication. Lindsay v. City of Chicago, 3 N. E. 443, 115 Ill. 120, followed.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

Action on the case by James T. Tartt, administrator of the estate of Jesse H. Phillips, Sr., against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company for causing the death of said Phillips. Plaintiff obtained judgment. Defendant brings error.

On July 7, 1891, the deceased, Jesse H. Phillips, Sr., the plaintiff's intestate, was killed by a collision with a train of the appellant (the defendant below) in the village of Venice, in the state of Illinois. The declaration, consisting of a single count, charges, in substance, that the defendant, on July 7, 1891, at a point within the incorporated village of Venice, killed the plaintiff's intestate, and avers that at the time of the collision, and immediately before his death, the deceased was on defendant's track, exercising all due care and diligence in seeking to rescue his minor son, aged eight years, who was in imminent peril from said train and engine, and that while exercising due care and diligence in that behalf he was killed; that there was in force in the village of Venice an ordinance by which it was provided that railroads should not run engines or trains within its limits at a greater rate of speed than 10 miles an hour; that, at the time of the killing of the deceased, the defendant's servants were running the engine and train at a rate of speed in excess of 10 miles an hour, to wit, at the speed of 60 miles an hour or thereabouts, in violation of said ordinance; that defendant's servants in charge of said engine and train saw the child upon the tracks in time to have enabled them, by the exercise of slight care, to have reduced the speed and averted the danger, "yet with gross and reckless and wanton negligence" they failed and neglected to reduce the speed until the collision occurred, and "with said gross and wanton negligence" they failed to give any signal or warning of the approach of said train, and that by reason of "said gross and wanton negligence" the deceased was killed; that the deceased left surviving him a widow and two minor children, who have suffered damage in the sum of $5,000. The pleas were the general issue, and that the deceased came to his death by his own negligence, to which latter plea there was a replication in denial.

The deceased had lived for about two months in a house located close to the railroad tracks. Every morning many trains passed his house, to and through the village of Venice, at a rapid rate of speed. The train which came into collision with him passed on the same track every morning at

substantially the same rate of·speed as on the morning of the fatal accident. The decedent either knew or was chargeable with knowledge of these facts. In going from his home to the village of Venice, the deceased could take the wagon road, a public highway which passed near his house and led directly into the village, running parallel with and immediately adjoining the railway, or he could take the railroad track or right of way. He took his son, aged eight years, and started to walk down the railroad, and on its right of way, to the village of Venice, distant about one mile from his home. He was killed at a point about 2,400 feet distant from his house. The defendant's track was straight and level for a distance of about 2,400 feet from the point where the injury occurred in the direction from which the train was coming, and a person on the track at that place could have been seen for that distance before the train reached him. Neither Phillips nor his son was seen by the engineer or fireman until the train was under the Merchants' bridge, distant from the point of collision only 785 feet; that, when seen, the deceased was walking along the east side of the track, and his son was walking between the rails, a few steps behind the father. They were going in the same direction as the train, and did not appear to be giving any attention to avoid danger from approaching trains. As soon as they were seen, the danger signal was sounded, and the emergency air brakes applied, but the speed of the train was so great, being from 50 to 60 miles an hour, that it did not stop until it had reached a point some 1,700 feet beyond the point of collision. The decedent did not seem to have had any apprehension of the approach of the train until the danger signal was sounded, when he sprang to the rescue of his son, and, crossing the track from east to west, he caught the lad in his arms, and sought to carry him out of danger, but before he got off the track he was struck by the engine, and both were killed. The point of collision was 2,390 feet from the house of the deceased. On the trial of the cause, to support the issues on his behalf, the plaintiff offered in evidence a copy of an ordinance of the village of Venice prohibiting the running of trains through that village at a greater rate of speed than 10 miles an hour. A certificate was attached thereto, which, so far as material, reads thus: "I, A. L. Summers, hereby certify that the annexed and foregoing is a true copy of Ordinance No. 32 of the village of Venice, passed July 7, 1877, and duly published according to law." The defendant objected to the introduction of the copy of the ordinance in evidence on the ground that it did not appear that it had been published in any of the modes prescribed by law. The objection was overruled, and the copy read in evidence over the objection and exception of the defendant. The plaintiff also offered in evidence a copy of the ordinance in question, contained in a pamphlet copy of ordinances, whose sole authentication was as follows: "Ordinances Adopted by the Board of Trustees of the Village of Venice, in Madison County and State of Illinois, John Haps, Printer, 1884,"—which authentication was printed on the cover of said pamphlet. The defendant objected to the admission of the printed copy of the ordinance in evidence on the ground that it did not purport to be published by authority of the board of trustees of said village. The objection was overruled, and the copy of the ordinance was read in evidence, to which the defendant saved an exception. The court, after stating the material averments of the declaration, charged the jury as follows: "The burden of establishing the negligence imputed in the declaration to the defendant, or such portion of it as constitutes a cause of action or creates a liability against the defendant by the weight or preponderance of the evidence, rests on the plaintiff; and, if the evidence is equally balanced on this point, you should find the defendant not guilty. The plaintiff's intestate was bound under the law, in order to warrant recovery, while on or dangerously near defendant's track, to exercise due care and caution, such as the dangerous position in which he found himself would naturally and reasonably have suggested. If, however, the weight or preponderance of the evidence in this case shows that the deceased father was struck and killed while attempting to rescue his child from danger of the approaching train, the railroad company would be liable if it was guilty of negligence with respect to the child before the father attempted the rescue, or with

respect to the father and child after an attempt to save the child began, although the father might have been guilty of contributory negligence in permitting the child to go on the track. If the evidence shows that at the time of the accident the defendant's engine and train of cars were running through the incorporated village of Venice at a greater rate of speed than ten miles per hour, and, while running at such excess of speed within said incorporated village, struck and killed plaintiff's intestate, from such act of excessive speed, the jury may presume negligence on the part of the defendant. But this act of negligence on the part of the defendant, if proven, would not absolve the deceased from using due care under all the circumstances surrounding him at the time; but the rule of law ordinarily obtaining (that, if the immediate cause of the injury can be traced to want of ordinary care and caution in the parties injured, there can be no recovery) must be taken subject to the qualification that contributory negligence on the part of the injured will not defeat the action, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured parties' negligence,"—to the giving of which charge to the jury, and each and every part of the same, the defendant, by its counsel, then and there excepted. The defendant seasonably presented to the court 15 written instructions, and asked the court to give them in charge to the jury. The court refused to give any one of said instructions, and the defendant duly excepted. Such of these instructions as are deemed material to the determination of this cause will be referred to in the opinion of the court. Some other subordinate questions are presented, but their consideration is unimportant, in the view which we take of the case.

John T. Dye and George F. McNulty, for plaintiff in error.

Amos R. Taylor and William L. Murfree, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

After making the foregoing statement, the opinion of the court was delivered by BAKER, District Judge:

The declaration, the course pursued on the trial, and the charge of the court place the right of recovery on the ground of negligence in one or all of the following particulars, namely: (1) In running the engine and train of cars through the village of Venice at a rate of speed in excess of 10 miles an hour, in violation of an ordinance; (2) or in failing to give timely warning of the approaching train; (3) or in failing to use care and diligence to stop the train before the fatal collision occurred. The case was not tried on the theory that the plaintiff's intestate was purposely and intentionally killed by the employés of the defendant in charge of the train. The declaration sounds in tort for the negligent, and not for the intentional, killing of the decedent. It is true that it charges that the engineer and fireman saw the boy on the railroad track in time to have enabled them to reduce the speed of the train, and thus to have averted the danger, and that "with gross and reckless and wanton negligence" they failed to do so, and that by reason of "said gross and wanton negligence" the decedent was killed. The gravamen of the charge, however, is negligence, and nothing is added to its force by the vituperative adjectives employed to characterize the degree or kind of negligence. The words "gross," "reckless," and "wanton," do not imply the same thing as "wilful" or "intentional." These terms have been used in some cases as though they might import something more than negligence, and

were the equivalent of willfulness. In the better considered cases, however, these terms have been held to mean less than willfulness, and nothing more than negligence. Negligence is negative in its nature, implying the omission of duty, and excludes the idea of willfulness. Willful or intentional injury implies positive and aggressive conduct, and not the mere negligent omission of duty. The charge of negligence does not, ex vi termini, import any actual or implied intention to do harm. Railroad Co. v. Huffman, 28 Ind. 287; Railroad Co. v. Graham, 95 Ind. 286; Ivens v. Railway Co., 103 Ind. 27, 2 N. E. 134; Railway Co. v. Schmidt, 106 Ind. 73, 5 N. E. 684. "To say that an injury resulted from the negligent and willful conduct of another is to affirm that the same act is the result of two exactly opposite mental conditions. It is to affirm in one breath that an act was done through inattention, thoughtlessly, heedlessly, and at the same time purposely and by design." Railway Co. v. Bryan, 107 Ind. 51, 7 N. E. 807; Beach, Contrib. Neg. 67, 68; Palmer v. Railroad Co., 112 Ind. 250, 14 N. E. 70. The railroad company has no right to inflict willful and intentional injury upon persons who are unlawfully on its right of way; and, where human life and limb are concerned, that injury may well be considered willful when, although able to do so, its servants neglect to arrest the engine and train which they have good reason to believe will, without an effort to stop them, result in injury to the wrongdoer. A trespasser is not necessarily an outlaw, whose life may be willfully destroyed. The declaration, however, as already stated, counts upon negligence, and not upon willfulness as the ground of action, and it is not necessary to express an opinion whether or not, upon the facts disclosed in the record, an action could be maintained for the willful killing of the decedent. The case made by the declaration is for negligence alone. It was tried by the parties, and submitted by the court to the jury, on this theory alone.

The decedent, accompanied by his son, was, when killed, walking on or dangerously near to the track of the company. He was not on or near any high way or street crossing. He was traveling along the right of way for his own convenience, without any invitation, express or implied, and with knowledge of the danger to life and limb from passing trains. It is true that he was killed while attempting to rescue his son from impending peril, but he had, by his own voluntary act, brought his son into a situation of danger, which gave rise to the peril. The only excuse offered for such conduct was that the defendant had suffered other people to travel along its right of way without interference or objection. He was traveling upon the defendant's right of way, not for any purpose of business connected with the railroad, but for his own convenience, as a footway, in reaching the village of Venice. The right of way was the exclusive property of the defendant, upon which no unauthorized person had the right to be for any purpose. It was a place of known danger, and there was nothing to exempt the decedent from the character of a wrongdoer and trespasser in traveling along the right of way further than the implied consent

of the defendant arising from its failure to interfere with the previous like practice by others. But because the defendant did not enforce its rights, and warn people off its premises, no right was thereby acquired to use its roadbed as a place for public travel. At most, it was used by sufferance, which amounted to no more than a mere naked license, and imposed no obligation on the part of the owner to provide against the danger of accident. The person who used the right of way for his convenience went there at his own risk, and enjoyed the implied license with its attendant perils. Elevator Co. v. Lippert, 18 U. S. App. ——, 11 C. C. A. ——, 63 Fed. 942. The decedent, then, stood in no more favorable position than that of a wrongdoer or trespasser. He was at the time of the accident in the exercise of no legal right, and at most was in the enjoyment of a naked license implied from the previous use of the right of way by others; and the rights and obligations of the decedent and the company are to be measured as in the case of parties thus situated. Where both parties are equally in the position of right which is enjoyed by each independently of the other, the plaintiff is only bound to show that the injury was occasioned by the negligence of the defendant, and that he exercised ordinary care to avoid it. But where the plaintiff is a wrongdoer or trespasser, or is in the enjoyment of a naked license for his own convenience, without any invitation, express or implied, from the owner of the premises, he cannot maintain an action for an injury without averring and proving that the injury was willfully inflicted, or that it was caused by negligence so gross as to authorize the inference of willfulness. As he was a trespasser, no action will lie against the company for causing his death unless the act of its employés in charge of the train was willful. A trespasser cannot maintain an action where the tort complained of consists of nothing more than the omission to exercise care. Railroad Co. v. Graham, 95 Ind. 286; Pennsylvania Co. v. Sinclair, 62 Ind. 301; Palmer v. Railroad Co., 112 Ind. 250, 14 N. E. 70; Beach, Contrib. Neg. (2d Ed.) §§ 198–201, 203. In the case of Railroad Co. v. Godfrey, 71 Ill. 500, it is held that the right of way of a railroad company is its exclusive property, upon which no unauthorized person has a right to be for any purpose, and that any one who travels upon it for his own convenience is a wrongdoer and trespasser; that the mere acquiescence of the company in the use of its right of way by persons passing along it for the purposes of travel does not give such persons a right of way over the track, nor is the company bound to protect or provide safeguards for persons so using it; and that a person so traveling along the right of way, where he is liable to come in collision with a passing train, is guilty of gross negligence, and he cannot maintain an action for an injury received while so traveling without averring and proving that the injury was willfully or wantonly inflicted, or that the negligence of the company was so gross as to justify the inference of willfulness. In the case of Railroad Co. v. Hetherington, 83 Ill. 510, it is held that, where an ordinance of a city prohibits railway companies from running their trains in the city at a greater rate of speed than six

miles an hour, the running of a train at the rate of fifteen miles an hour, resulting in the death of one wrongfully upon the track, will not make the injury willful on the part of the company. In the case of Blanchard v. Railway Co., 126 Ill. 416, 18 N. E. 799, it is held that, where a person is killed by an engine or train while wrongfully on a railway track,—as, where he is walking thereon for mere convenience or pleasure, not at a public crossing,—he is guilty of such gross negligence as to preclude a recovery by his personal representative against the company operating the engine or train, unless his death is caused willfully or wantonly, or the company is chargeable with such gross negligence as is evidence of willfulness. The case of Railroad Co. v. Mehlsack, 131 Ill. 61, 22 N. E. 812, affirms the same doctrine. In Johnson v. Railroad Co., 125 Mass. 75, it is held that a person injured while trespassing on a railroad track, by coming in collision with a train, is guilty of negligence which, as matter of law, will preclude his maintaining an action therefor unless the injury was willfully inflicted. This doctrine is affirmed by the same court in cases too numerous to justify citation. Such is the settled law in other jurisdictions. Railroad Co. v. Munger, 5 Denio, 255; Chrystal v. Railroad Co., 105 N. Y. 164, 11 N. E. 380; Cusick v. Adams, 115 N. Y. 55, 59, 21 N. E. 673; Heil v. Glanding, 42 Pa. St. 493; Gillis v. Railroad Co., 59 Pa. St. 129; Railroad Co. v. Filbern, 6 Bush, 574; Canal Co. v. Murphy, 9 Bush, 522; Railroad Co. v. Depew, 40 Ohio St. 121; Railroad Co. v. Houston, 95 U. S. 697.

Nor is the plaintiff's intestate entitled to recover because he was killed while attempting to rescue his son. He and his son were trespassers and wrongdoers at the time the fatal collision occurred. The decedent voluntarily, for his own convenience, exposed his son to the peril from which he attempted to rescue him. If he had been where he had a right to be, and if he had not been chargeable with exposing his son to peril, his attempt to rescue him would not have constituted such an act of negligence on his part as to preclude a recovery for an injury caused by the negligence of the railroad company.

While the charge of the court is erroneous, we would not be justified in reversing the case for that reason, because no proper exception was reserved. Association v. Lyman, 9 C. C. A. 104, 60 Fed. 498. The appellant asked the court to direct the jury to return a verdict in its favor, which direction ought to have been, but was not given. The appellant also asked the court to instruct the jury, in substance, that if they believed from the evidence that the deceased, for his own convenience and that of his son, at or before the time he was struck, was walking along the track, he was not a lawful traveler thereon, and had no right there, and that the railroad company was under no obligation to give him or his son the right of way over its track in preference to its trains; "and if the deceased, at and before he was struck, was walking with his son on or near the track, and in consequence of so walking along the track his son was placed in danger, and he tried to rescue him, and was hit, you must find for the defendant unless the injury was

willfully inflicted." This instruction enunciated a proposition of law in harmony with the views expressed in this opinion, and it ought to have been given. There are other instructions which were tendered and refused, but it is not needful to determine their accuracy, because the case was tried on a wrong theory, and, if a retrial should be had, other principles of law will govern the case on such retrial.

It is insisted that there was a fatal variance between the averments of the declaration and the proof in this: that it is alleged that the plaintiff brought suit as a public administrator, while the proof shows that he was a private administrator. It is not necessary to consider this question, for the reason that, if another trial is had, it will be necessary to amend the declaration, and the alleged error may be cured by amendment.

It is earnestly insisted by counsel for the appellant that the court erred in admitting in evidence a certified copy of Ordinance No. 32 of the village of Venice, which prohibited the running of railroad trains through the village at a rate of speed in excess of 10 miles an hour. The copy of the ordinance was certified by the village clerk, under the corporate seal, as a true copy of Ordinance No. 32 of the village of Venice, passed July 7, 1877, and duly published according to law. The introduction of the copy of the ordinance was objected to on the ground that it did not appear that it had been published in any one of the modes required by law, and that the statement of the clerk that it had been "duly published according to law" was a conclusion, and not a statement of fact. It is conceded by the appellee that it is necessary to show the passage and publication of the ordinance in the manner prescribed by the statute of the state, to give it effect as a local law. It is also conceded that the clerk, as the custodian of the village records, could not certify to anything but copies of such records, and that his certificate to any conclusion, either from the records or outside of them, is beyond his power and unauthorized, unless his common-law authority has been enlarged by the statute. It is insisted that the statute, as construed by the decisions of the supreme court of the state of Illinois, has wrought such change. The statute touching this matter is as follows:

"All ordinances, and the date of publication thereof, may be proven by the certificate of the clerk, under the corporation seal. And when printed in book or pamphlet form, and purporting to be published by authority of the board of trustees, or the city council, the same need not be otherwise published; and such book or pamphlet shall be received as evidence of the passage and legal publication of such ordinances, as of the dates mentioned in such book or pamphlet in all courts and places, without further proof." 1 Starr & C. Ann. St. p. 474, c. 24, § 66.

In the absence of authority, we might have reached the conclusion that, to authorize a certified copy of an ordinance to be read in evidence, the clerk's certificate should have stated that the copy was a true and complete one, and also it should have stated the date of its publication; and that the statement that it was "duly published according to law" was the statement of a mere conclu-

sion, and ineffective for any purpose. It is, however, held by the supreme court of Illinois that a certified copy of an ordinance, under the seal of the corporation, with nothing further, is evidence of its passage and legal publication. In Lindsay v. City of Chicago, 115 Ill. 120, 123, 3 N. E. 443, the court say:

"It is too plain to admit of argument that where the ordinances of a town or city have been printed in book or pamphlet form, purporting to be published by authority of the board of trustees or city council, the book shall be received as evidence of the passage of the ordinance, because this is the plain language of the statute. But a book of ordinances was not put in evidence. The petitioner, in lieu of the book, put in evidence a certified copy, attested by the clerk, under the seal of the corporation. This, in our opinion, proved the passage of the ordinance as effectually as the fact would have been proved had a printed book of ordinances been admitted. The language found in the first part of section 4 [section 66, supra], 'All ordinances and the date of publication may be proven by the certificate of the clerk, under the seal of the corporation,' will admit of no other construction. It is said this means that you may thus prove the contents of an ordinance. But such is not the language of the act. The language is, the ordinance may be proven. The legislature no doubt intended, by the use of this language, that a certified copy of an ordinance, under the seal of the corporation, made by the clerk of the council, should have the same force and effect, as evidence, as a printed book of ordinances, which, in express terms, is made evidence of the passage and publication of an ordinance."

To the same effect is the case of Railroad Co. v. Voelker, 129 Ill. 540, 22 N. E. 20. In this case the court say:

"Under these decisions, as well as upon principle, it must be held that the copies of the ordinances in this case, certified by the city clerk and authenticated by the corporate seal, were competent evidence tending to show that said ordinances had been duly passed by the city council, and that they had gone into effect in one of the modes prescribed by the charter."

The construction placed upon the statute by the supreme court is binding on us, and it follows that no error was committed in permitting the copy of the ordinance in question to be read in evidence to the jury. This view renders it unnecessary to express any opinion on the question whether or not the printed pamphlet copy of ordinances was improperly admitted in evidence. If it were conceded to be incompetent, it was merely cumulative evidence of a fact already proven by competent evidence, and hence it was harmless. The judgment is reversed, at the cost of the appellee, and remanded to the court below with instructions to grant a new trial, and to permit the declaration to be amended if the appellee so desires.