CAHILL v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. May 7, 1896.)

No. 270.

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—PLEADING.
   An averment that a path by which plaintiff was crossing the tracks was well known, and generally and publicly used, is a sufficient averment, in the absence of special demurrer, of knowledge on the part of the railroad company of the existence of the path.

2. SAME.
   An averment that the company did "negligently, willfully, recklessly, wantonly, and carelessly" run its engine and cars upon her, etc., is a good charge of negligent injury. Jenkins, Circuit Judge, dissenting.

3. SAME—IMPLIED LICENSE TO CROSS TRACKS.
   At a place where several thousands of persons cross the switching tracks of a railroad daily, and where no effort is made to stop them, by fencing, posting notices, or otherwise, persons attempting to cross are not mere trespassers; and the company is bound, not merely to refrain from wanton or willful injury after discovering them, but to anticipate their probable presence, and move its cars with reasonable precautions, and a proper regard to their safety.

4. SAME—QUESTION OF FACT.
   It is a question of fact in each case whether there has been, with the acquiescence of the railroad company, such a public and customary use of the alleged crossing as to justify the presence upon the track of the person injured.

5. REVIEW ON ERROR—QUESTIONS NOT CONSIDERED BELOW.
   In an action for personal injuries sustained in crossing a railroad track, the court directed a verdict for defendant on the sole ground that, notwithstanding the custom of many people to pass that way daily, the place of the accident was not a "crossing" in respect to which the company could be charged with negligence. *Held,* that where, on appeal, this ruling was found erroneous, the better practice required that the judgment be reversed, and a new trial directed, without considering a defense of contributory negligence which was not considered by the court below.

Lancaster v. Collins, 6 Sup. Ct. 33, 115 U. S. 222, distinguished. Jenkins, Circuit Judge, dissenting.

6. TRIAL—PEREMPTORY INSTRUCTION—DISOBEDIENCE OF JURORS.

The refusal of a juror to obey a peremptory instruction to find a verdict for one of the parties is reprehensible in the highest degree, and may subject him, and those who encourage him therein, to punishment for contempt. In such case, it seems, the court would have authority to direct the entry of the verdict without the assent of the jury; and the court should not accept a stipulation of record, permitting a judgment of dismissal to be entered, to have the same effect as a verdict under direction of the court, with the right of exception thereto.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Richard Prendergast and J. E. Deakin, for plaintiff in error.

Charles B. Keeler, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and GROSSCUP, District Judge.

WOODS, Circuit Judge. This is an action on the case for personal injury suffered by Maria Cahill, the plaintiff in error, who, when attempting, afoot, to cross a switching track of the defendant in error at the Union Stock Yards, in Chicago, was struck and run over by a backing engine, whereby she lost both feet, and suffered other serious bodily injuries. The action was commenced in the Cook county circuit court, and transferred thence to the court below, where additional counts to the declaration were filed, in the first of which it is charged that on the 25th day of November, 1892, the defendant was operating and moving a locomotive, with two freight cars attached thereto, upon a certain railroad track, across which lay and ran a well-known and generally and publicly used path and passageway for pedestrians, in which path the plaintiff was walking, as she and the public were accustomed to do, and while she was so walking, and was exercising due and proper care, the defendant's servants "did so negligently, willfully, recklessly, wantonly, and carelessly move and run the said engine and cars towards and against plaintiff as thereby to throw plaintiff to the ground." This is a good charge of negligent injury. The allegation that the path was well known and publicly used, in the absence of a special demurrer, or a motion to make more specific, is equivalent to an averment of notice to the railroad company of the existence of the path.

While the place of the accident, it is conceded, was not a highway, or other established public crossing, yet for many years great numbers, counting thousands daily, of men, women, boys, and girls, were accustomed to cross there, morning and evening, when going to and returning from their work. Of this custom the defendant in error, and other railroad companies possessing and using adjacent tracks, were not ignorant; and their consent to it, if not admitted, was fairly inferable. No earnest efforts were made, nor efficient means shown to have been employed, to cause people to desist from passing that way, though a few rods of fence along the east side of Packers avenue, it is apparent, would have been sufficient for the purpose. If such a fence could not have been erected without the consent of the

Union Stock-Yards Company, it is a fair inference, from the community of interests between that company and its lessees, the railroad companies, that the consent could have been had for the asking. Besides, one resolute man at each end of the path, if not able to turn the passing people another way, could have given such distinct and constant warning as to make trespassers of all who persisted in crossing. For that purpose, perhaps, a painted sign, "Keep Off the Tracks," at either end of the path, would have been sufficient, but no such signs were there. The court below directed a verdict for the defendant; putting its ruling, as the entire charge shows, on the sole ground that the place where the injury was suffered, notwithstanding the custom of large numbers to pass that way daily, "was not to be considered a crossing" in respect to which the company could be charged with negligence, and that the only ground on which the company could be liable for the injury was wanton and willful conduct of its servants, of which there was no evidence. This ruling was erroneous. While it is well settled that, under ordinary circumstances, a railroad company owes no duty to a trespasser upon its tracks, it is also true that a trespasser may not be wantonly or willfully run down, and when he is perceived to be in a position of danger, from which he is not likely to escape by his own exertions, there arises on the part of the company a duty to use all reasonable diligence not to harm him. Railway Co. v. Tartt, 12 C. C. A. 618, 64 Fed. 823, and 24 U. S. App. 489. That much is due to a decent regard for human life and limb, and, on the same principle, it must be that in places on the tracks where people are accustomed to come and go frequently in considerable numbers, and where by reason of such custom their presence upon the track is probable, and ought to be anticipated, those in charge of passing trains must use reasonable precautions to avoid injury, even to those who, in a strict sense, might be called trespassers. But, when a railroad company consents to the customary or frequent passing of people over its tracks, they cannot be deemed trespassers, and the duty is as clear as the necessity that locomotives and cars be moved with proper regard for their safety. The adjudged cases on the subject are numerous. A leading one is Barry v. Railroad Co., 92 N. Y. 289, 292, where there had been long acquiescence of the company in the crossing of its track by pedestrians, which amounted to a license and permission to all persons to cross at a point where there was only a private right to cross; and it was held that the circumstances imposed a duty upon the company, in respect to persons using the crossing, "to exercise reasonable care in the movement of its trains." This case is reaffirmed in Byrne v. Railroad Co., 104 N. Y. 362, 10 N. E. 539, where it was held "that the defendant was not absolutely bound to ring a bell or blow a whistle, but that it was bound to give such notice or warning of the approaching train as was reasonable and proper under the circumstances." In Taylor v. Canal Co., 113 Pa. St. 162, 8 Atl. 43, after reference to the Barry Case the supreme court of Pennsylvania says:

"The principle, clearly settled by the foregoing and many other cases that might be cited, is that when a railroad company has for years, without ob-

jection, permitted the public to cross its tracks at a certain point, not in itself a public crossing, it owes the duty of reasonable care toward those using the crossing; and whether, in a given case, such reasonable care has been exercised, or not, is ordinarily a question for the jury, under all the evidence."

In Roth v. Union Depot Co. (Wash.) 43 Pac. 641, where there is a discriminating review of cases, it is held that a company's acquiescence in the daily use of its track for travel afoot by 50 to 100 people imposes on the company a duty of ordinary diligence to avoid injury to persons using the track. In Railway Co. v. Dick (Ky.) 15 S. W. 665, involving the same question, it was said that "undoubtedly the appellee ought not to be regarded as a trespasser upon the yard of the company," because he "was crossing the tracks by the permission of the company. It had, by its acquiescence in the work hands crossing them for a long time, licensed them to do so. It was permitting such use, and it had, therefore, by its own conduct, imposed upon itself a precautionary duty, as to the appellee, when he might be crossing its tracks in going from and returning to his work." To the same effect are Railway Co. v. Wymore (Neb.) 58 N. W. 1120; Ward v. Southern Pac. Co. (Or.) 36 Pac. 166. See, also, Townley v. Railway Co., 53 Wis. 626, 11 N. W. 55; Whalen v. Railway Co., 75 Wis. 654, 44 N. W. 849; Conley v. Railway Co. (Ky.) 12 S. W. 764; Railway Co. v. Crosnoe, 72 Tex. 79, 10 S. W. 342; Railway Co. v. Meigs, 74 Ga. 857; Southerland v. Railroad Co., 106 N. C. 101, 11 S. E. 189; Frick v. Railway Co., 5 Mo. App. 435; Palmer v. Railway Co., 112 Ind. 252, 14 N. E. 70. It is, of course, a question of fact, in each case, whether there has been, with the consent or acquiescence of the railroad company in possession, such a public and customary use of the supposed crossing as to justify the presence upon the track of the person injured. Taylor v. Canal Co., supra; Chenery v. Railroad Co., 160 Mass. 211, 35 N. E. 554.

We are asked, however, to affirm the judgment on the ground of contributory negligence on the part of the plaintiff in error. It is within our power to examine the evidence, and to affirm the judgment on that ground, if in accordance with the rule laid down in Hayes v. Railroad Co. (just decided by this court) 74 Fed. 279, we should find the proof to be without conflict, and convincing; but we do not deem it obligatory upon us, in this instance, to enter upon that inquiry. The record shows affirmatively that the circuit court based its decision upon the proposition which we have considered, and if, after declaring that untenable, we should affirm the judgment on another ground, our action would be primary, and not, as is contemplated by a writ of error, merely a review. If the record showed simply a peremptory instruction for a verdict one way or the other, it would be necessary to consider whether or not, upon any view of the entire evidence, the instruction was right; but when the ground of the decision is disclosed, as in such cases it ought perhaps always to be, and especially when there is, or can reasonably be, dispute about the facts, or about the inferences of fact deducible from the evidence, we think it the better practice that the review on writ of error should not extend beyond the question considered below. Ordinarily a correct decision will be affirmed, though pred-

icated upon an unsound reason; but here there were two distinct issues, each of which, if found for the defendant, was determinative of the case: First. Was the place where the injury occurred a passageway of the character alleged in the declaration? Of that issue the plaintiff in error had the burden of proof, and the court, deeming the evidence insufficient, withdrew the question from the jury. Second. Was the plaintiff in error guilty of contributory negligence? Of that issue the defendant in error had the burden of proof, and the court made no ruling and expressed no opinion about it. When an item of evidence is admitted or rejected, the question is a single one; and if the ruling be right it will be upheld, regardless of any mistaken reason upon which it was based. And so of any single ruling whatever which may occur in the progress of a cause,—it must be disposed of on appeal upon its merits. But it is manifestly a different proposition when the court has erroneously directed judgment against the plaintiff in the action because of the supposed lack of evidence to support the declaration, and we are asked to affirm the judgment on the ground that an affirmative defense has been established, in respect to which the court expressed no opinion. There can be no question of the proposition found in Lancaster v. Collins, 115 U. S. 222, 227, 6 Sup. Ct. 33, that "no judgment should be reversed in a court of error when it is clear that the error could not have prejudiced, and did not prejudice, the rights of the parties against whom the ruling was made." Such were all the cases cited in the dissenting opinion. In none of them was there, or could there have been, a dispute about the facts on which an affirmance was ordered. But in this case not even the physical facts are in all material respects certain. The ultimate question, which must be determined by inference,—whether or not the plaintiff in error, when hurt, was exercising due and ordinary care,—is in dispute; and what the conclusion ought to be, does not seem so clear as to require, or perhaps to justify, an affirmance of the judgment on the ground of contributory fault. It is therefore deemed best now to say nothing more definite on the subject.

While we have treated the judgment in this case as if it had been rendered upon a verdict of the jury delivered in accordance with the court's peremptory direction, the fact is not literally so. The record shows that the jurors, at the conclusion of the charge, refused to render a verdict for the defendant, severally stating that they could not conscientiously do so, whereupon the court said: "Very well. You may retire to your room, and return with such a verdict as you may find." The jury accordingly retired, but were recalled into court at a later hour, and directed again to return a verdict for the defendant; but, one juror still holding out, counsel for the plaintiff was permitted to stipulate of record that a judgment of dismissal might be entered, to have the same force and effect, and none other, than a verdict for the defendant under the direction of the court, but that plaintiff should be considered as excepting to such direction, and also to such order of dismissal, and thereupon the court ordered such dismissal, and the plaintiff there-

upon excepted to such ruling. The stipulation should not have been accepted. The authority and duty of a judge to direct a verdict for one party or the other, when, in his opinion, the state of the evidence requires it, is beyond dispute; and it is not for jurors to disobey, nor for attorneys to object, except in the orderly way necessary to save the right to prosecute a writ of error. The conduct of the juror in this instance was in the highest degree reprehensible, and might well have subjected him, and any who encouraged him to persist in his course, to punishment for contempt. His conduct was in violation of law, subversive of authority, and obstructive of the orderly administration of justice. In fact, by his course he put in jeopardy the interests which he assumed to protect, because it is only by treating the case as if the verdict directed had been returned that we have been able to review the judgment and to order a new trial. We deem it proper to observe here that it is not essential that there be a written verdict signed by jurors or by a foreman, and we have no doubt that, in cases where the court thinks it right to do so, it may announce its conclusion in the presence of the jury and of the parties or their representatives, and direct the entry of a verdict without asking the formal assent of the jury. Until a case has been submitted to the jury for its decision upon disputed facts, the authority of the court, for all the purposes of the trial, is, at every step, necessarily absolute; and its ruling upon every proposition, including the question whether, upon the evidence, the case is one for the jury, must be conclusive until, upon writ of error, it shall be set aside. That remedy is provided by law, and presumably will be effective and adequate, if there be just ground for invoking it. Certainly the obstinacy of a conceited juror is not likely to prove a wholesome substitute. The judgment is reversed and the case remanded, with instructions to grant a new trial.

JENKINS, Circuit Judge (dissenting). The court upholds the right of the plaintiff in error to recover under the first of the additional counts filed at the trial, and upon the evidence shown by the record, if the jury should find, upon such evidence, that the railway company was guilty of negligence. This is the only count of the declaration upon which judgment can be rested. This count charges that the railway company operated and moved a locomotive, with two freight cars attached, upon a certain railroad track, alongside of and over and across which track "lay and ran a well-known and generally and publicly used path and passageway for pedestrians, in which path and passageway plaintiff was then and there walking as she and the public were accustomed therein to walk," and that while she was so walking therein, along the path across the track, the railway company, by its servants, "did so negligently, willfully, recklessly, wantonly, and carelessly" move and run the engine against the plaintiff that she was injured, etc., which injury occurred through the "willful and wanton negligence and conduct of the defendant," to her damage, etc. The accident occurred within the private switching yard and grounds of the railway company. There was no evidence of a public highway, and the most that the evidence

tended to prove was an implied license to cross the private ground and tracks of the railway company. This count of the declaration fails, however, to plead any such license, in that it is not therein averred that the use of the path was with the knowledge and consent of the company. Burg v. Railway Co., 90 Iowa, 106, 112, 57 N. W. 680. This count was drafted with an imperfect comprehension of, or without regard to, the law of negligence. There is no such thing as "willful negligence." Negligence excludes the idea of willfulness. Negligence is the omission of a duty, not the commission of a willful act. Railway Co. v. Tartt, 24 U. S. App. 489, 12 C. C. A. 618, 620, and 64 Fed. 823. These "vituperative adjectives" impart no force and give no effect to the declaration. If the count can be said to embrace a charge that the railroad company, through its servants, willfully ran its cars against the plaintiff in error, it is enough to say that the record is absolutely wanting in any evidence to support such charge, but proves to the contrary. If it can be upheld to charge negligence in the management of the train, or in the failure to discharge some duty owing to the plaintiff in error, because of an implied license to cross the track, it is sufficient to say that it neither specifies the duty, nor declares wherein there was failure to discharge the duty. The count may properly be characterized as a collection of "vituperative adjectives." The second additional count pleads an act of negligence subsequent to the act charged in the other counts, distinct therefrom, resulting in further injury, and constituting another cause of action. This count was filed more than two years subsequent to the injury, and to it the Illinois statute of limitations was pleaded. The action on that count was barred. Phelps v. Railway Co., 94 Ill. 557; Railway Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877.

2. We have held in Elevator Co. v. Lippert. 24 U. S. App. 176, 11 C. C. A. 521, and 63 Fed. 942, that a licensee who enters upon the premises of another by permission only, without allurement, inducement, or invitation held out to him by the owner or occupant, cannot recover damages for injury caused by obstructions or excavations. He acts at his own risk, and enjoys the license subject to its attendant perils. Thus, in Bolch v. Smith, 31 Law J. Exch. 201, where workmen were permitted to use a place as a way, on which revolving machinery had been erected, it was ruled that the right so to use the place was only the right not to be treated as a trespasser, and that there was no obligation to fence the machinery, and no liability for insufficiently fencing it. While, however, the licensee takes the privilege subject to the perils arising from the condition of the premises, and from the nature of the business as there ordinarily carried on, the licensor must refrain from doing any further act to endanger the safety of the person exercising the license. The proposition is thus stated in Gallagher v. Humphrey, 6 Law T. (N. S.) 684, by Wrightman, J.:

"It appears to me that such permission as is here urged may be subject to the qualification that the person giving it shall not be liable for injuries to persons using the way, arising from the ordinary state of things, or of the ordinary nature of the business carried on; but that is distinguishable from

the case of injuries wholly arising from the negligence of that person's servant."

There must not be, as stated by Chief Justice Cockburn in the same case, superadded negligence, in addition to existing dangers. With this explanation, and possible limitation, I think the case of Railway Co. v. Tartt, 24 U. S. App. 489, 12 C. C. A. 618, and 64 Fed. 823, decided by this court, correctly states the law. The difference between that case and the one in hand is this: There the implied licensee was walking along the track; here she was attempting to cross the track. There the implied license was exercised but by few persons; here, by a multitude daily,—morning and evening. Whether, under the circumstances here existing, a duty was imposed upon the railway company to operate its trains otherwise than in accordance with the ordinary method of operation before and at the time of the license; whether the license was not subject to such ordinary method of operation; whether, by reason of the license, a duty was imposed upon the railway company to give warning of the approach of a train to the way so granted, such as is by statute required at a crossing of a public highway; whether any other duty was imposed than that of active watchfulness to avoid injury to those upon or about to cross the track upon the licensed way; and whether the duty of warning arises until it is manifest that one is about to cross the track,—are questions upon which the courts are not at agreement, and which, as I think, are not presented by the pleadings, and, for reasons hereinafter stated, are questions not necessary to be considered at this time. The majority opinion would infer a license here because "no earnest efforts were made, nor efficient means shown to have been employed, to cause people to desist from passing that way, though a few rods of fence along the east side of Packers avenue, it is apparent, would have been sufficient for the purpose." This railway company had no right to erect fences upon the land of another. The property where it is said a fence should have been erected belonged to the Union Stock-Yards Company. If there were legal or moral duty resting upon any one in this respect, it was a duty devolving upon the Union Stock-Yards Company, and not upon the defendant in error, which had no control over the premises. It was not possible or feasible for the railway company to have inclosed its own tracks, part of the network of rails, to keep out the multitude. Nor do I see in what manner the five or six thousand persons daily crossing the track could have been prevented from so doing, except by the maintenance of a constabulary force. The law does not impose upon the owner such a duty towards trespassers, nor does his failure to employ physical force to prevent trespass operate as an implied license. It certainly was not neglect of duty to omit, nor can a license be inferred from failure, to erect a fence upon the land of another. I am not impressed with the correctness of the doctrine of vicarious punishment, applied to mundane affairs.

3. Upon her own evidence, and upon the testimony of her witnesses, it is clear, as matter of law, that this injury happened through the negligence of the plaintiff in error. The locality was one of great danger. To go over the course, she was obliged to cross a network

of tracks, about 15 in number, diverging through the switch yard, and converging at the crossing of Packers avenue. She had traveled this course, morning and evening, for two years. She knew and understood all the dangers of that very dangerous locality. She states:

"These engines switching back and forth would pull cars out, and shove them in, on the different tracks. In going there, from west of the hog chute to Packers avenue, you were liable at any time, morning or evening, to meet several engines and trains working in there. That was a daily occurrence, day and night, during the two years I went there. In attempting to cross these tracks, I could not tell before I got there on what particular track I would meet switch engines and trains. Could only tell by looking up and down the track, east and west, before I stepped on it."

Upon the occasion in question she left Transit avenue at or near the overhead hog chute, crossed a railroad track, and turned into the irregular space intervening between the north track of the Chicago, Milwaukee & St. Paul Railway Company and the track to the north of it, owned by some other company. She walked along that space to a point 15 or 20 feet west of the low switch stand, and then turned towards the south to cross the network of tracks. At that point the width of this irregular space was $10^6/_{10}$ feet, and, walking along the space, she was from 4 to 5 feet distant from the north rail of the track upon which she met her injury. At some little distance east of the switch she had met the switch engine which was pushing cars to the east. As she turned to cross the track, and when within five feet of it, she looked to the east, and thought the engine was standing still. Without stopping or again looking, she went upon the track, walking slowly, and as she stepped upon it she was struck by the engine coming westward. This is her relation of the facts, corroborated by some of her witnesses. The witness Bohringer, who testified in her behalf, states that she looked towards the engine when she was 15 or 20 feet east of the switch, and was about to look again as she stepped upon the track and was struck. The switch engine did not proceed eastward more than 125 to 150 feet from the place of the accident. The witnesses vary upon the question, some stating the distance to be 35 feet. Upon stopping, the engine was immediately reversed, and commenced to back, and, upon reaching the place of the injury, had attained a speed of not more than from four to six miles an hour. The fireman, sitting in his cab window as the engine proceeded westerly, saw the plaintiff, and so soon as she turned, indicating a purpose to go upon the track, gave the proper signal, and yelled to the engineer, and every possible effort was then made to stop the engine. If only the duty of active watchfulness was imposed upon the railway company before a purpose to cross the track was manifested, that duty was discharged. The operatives of the train had right to assume that one would not attempt to cross the track without looking and listening for a coming train, and would stop (Railroad Co. v. Miller, 25 Mich. 279),—as much right to assume that the girl, from the common instinct of self-preservation, would so govern her conduct, as a traveler upon the public highway has the right to rely upon the giving of statutory signals at a crossing. If no duty was cast upon the railway company until it was apparent that the girl was about to attempt the

crossing of the track, the duty then devolving was fully performed. The engine was brought to a full stop within the distance of its length. The girl, struck by the tender, was found between the driving wheels of the locomotive. There can be no doubt that the girl was mistaken in supposing that the engine was standing still, if she looked, as she states, when she turned to go upon the track. If she looked, as Bohringer relates, when she was 15 or 20 feet east of the switch, it is probable that the engine was at that moment not in motion. At a speed of 6 miles an hour, the engine was traveling not more than 3 feet to her 1 foot. So that when she turned in her course to go upon the track, and was 5 feet distant therefrom, the engine could not have been more than 15 feet from the place of the injury. It is inconceivable that then, seeing the engine, she should have indulged the mistake that it was not in motion. The look which she gave was a passing glance. She did not listen, and it was her duty to listen as well as to look. Attempting to cross this network of tracks constantly occupied by switching engines going in both directions, in this place of extreme danger,—which may appropriately be termed the "jaws of death,"—her duty was not fulfilled by the giving of a casual glance. It was her duty to look carefully, to listen carefully, and to stop unless the way was clear. Assuming that her narration of facts is the correct one, she was delinquent in duty, in failing to look and to listen and to stop before she ventured to put foot upon the railway track. There was no obstruction to the view. Had she properly used her senses, she could not have failed to see the coming train. It was close upon her. If she mistook the situation, when the exercise of care would have revealed it, her error, and its resulting injury, ought not to be visited upon another. If the narrative of the facts by the witness Bohringer be the correct one, and she only looked when 15 to 20 feet east of the switch, she was equally negligent in failing to look and to listen or to stop before she ventured upon the track. That one so fully apprised of the dangers surrounding her should have been so thoughtless of her own safety can only be explained upon the theory that she had become habituated to, and regardless of, the danger which daily confronted her. However much she may be entitled to our sympathy for her misfortune, the law cannot hold such conduct to be the exercise of ordinary care, or permit her to recover, without disregarding well-settled principles of law, and without tendering a premium to reckless conduct. Under the circumstances, it was the duty of the trial court to withdraw the case from the jury and to direct a verdict. Railroad Co. v. Houston, 95 U. S. 697; Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125; Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85; Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619; Nolan v. Railway Co., 91 Wis. 16, 64 N. W. 319. The facts considered were proven by the appellant, and are without contention. The law, applied to the ascertained facts, declares her conduct negligent, precluding recovery. There is no inference to be indulged by court or jury, and therefore there was no issue to be submitted to the jury.

The court declines to consider this question of contributory neg-

ligence because it appears from the record that the trial court based its direction for a verdict upon another ground, and that, to review the decision upon any other ground than that given for the ruling, the action of this court would be primary, and not in review of something done below. I am constrained to dissent from that conclusion. We are concerned with the correctness of the ruling of the court, not with the reason given for that ruling, except so far as it may guide us to a correct conclusion upon the reason assigned for the ruling. The exception and the assignment of error go to the ruling, not to the reason stated for the ruling. If it is clear that the ruling was right, although the reason assigned for the ruling was wrong, we are not called upon to reverse a judgment founded upon a correct ruling. Our action in affirming a correct ruling rendered upon an erroneous ground would not be, as the court assumes, primary. It would be a review of something done below,—a review of the ruling of the court below. It is conceded that, if no reason were assigned, we should affirm the ruling, if, in any view of the evidence, the ruling was correct. The direction of a verdict brings here, under proper exception and assignment of error, the whole case for review. If it appeared clearly that the direction was right, the ruling should be affirmed, notwithstanding an erroneous reason given for the ruling. If the appellate court, in an instance in which it is authorized to review the entire case, can see that, for any cause, the party appealing ought not to prevail, it is the merest formality, and a useless formality, to reverse because the trial court, adjudging rightly, placed its judgment upon doubtful or erroneous ground. This is so, also, without regard to which party had the burden of proof thereon. The vital question concerns the correctness of the ruling, the whole case considered. All else is formal and inconsequential. If a trial court gives a wrong reason for a correct conclusion, the error is a harmless one, resulting in no injury to the party. We are concerned here not so much with abstract principles or reasons as with injuries resulting to the party from the application of them. In Swager v. Lehman, 63 Wis. 399, 23 N. W. 579, certain testimony was ruled out upon a ground that the supreme court thought not to be valid; but, being admissible upon other ground, it held the ruling correct, and affirmed the judgment. In Brobst v. Brock, 10 Wall. 519, the court observed:

"It would be idle to reverse the judgment, and send the case back for a new trial, if it be certain that the plaintiff cannot recover in the action."

In Barth v. Clise, 12 Wall. 400, the court says, citing a number of previous decisions in that tribunal:

"The plaintiffs in error, according to their own showing, had not a shadow of a right to recover in this action against Clise. Conceding, for the purposes of this opinion, that the court below erred in all the particulars complained of, the errors have done them no harm. Opposite rulings could not have helped them. Their case was inherently defective. The defect was incurable, and inevitably fatal. When such a defect exists, whether it be or be not brought to the attention of the court below, or of this court, by counsel, it is our duty to consider it, and to give it effect."

In Decatur Bank v. St. Louis Bank, 21 Wall. 294, 301, the trial court instructed erroneously upon the effect of one letter as consti-

tuting a guaranty; but another letter in evidence was held by the appellate court to lead to the same result, and therefore the judgment was affirmed, the court observing, "The result is right, although the manner of reaching it may have been wrong." In McLemore v. Bank, 91 U. S. 27, 28, the court said that it was unnecessary to consider whether, in all respects, the charge of the circuit court to the jury was correct, because the record showed the case of the plaintiff to be so fatally defective that the judgment below would not be reversed for instructions, however erroneous. In Lancaster v. Collins, 115 U. S. 222, 227, 6 Sup. Ct. 33, it is said, "No judgment should be reversed in a court of error when it is clear that the error could not have prejudiced, and did not prejudice, the rights of the party against whom the ruling was made." In Wisner v. Brown, 122 U. S. 214, 7 Sup. Ct. 1156, the court said it was unnecessary to consider the validity of the ground upon which the trial court directed a verdict, because "there was another ground upon which the court of trial might unquestionably have instructed the jury to find a verdict 'for the defendant." In West v. Camden, 135 U. S. 507, 521, 10 Sup. Ct. 838, the court said it was unnecessary to examine the correctness of a certain instruction to the jury, "for, even though that might have been an erroneous instruction, it did no harm to the plaintiff, because he could not recover in any event." In Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, the court affirmed the judgment, not only upon the ground of the ruling below, but also and mainly upon the ground of want of negligence, which ground the trial court had not passed upon. The distinction sought to be drawn in the majority opinion here would not seem to have been considered by the supreme court to be of force. For the reasons stated I dissent from the judgment of the court.