CLEVELAND, C., C. & ST. L. RY. CO. v. TARTT.

(Circuit Court of Appeals, Seventh Circuit. January 25, 1900.)

No. 557.

1. RAILROADS—INJURY OF PERSON ON TRACK—TRESPASSERS.

As between a railroad company and a trespasser on its right of way, no duty of care to avoid injury to such trespasser arises until those in charge of the train have discovered his presence on or dangerously near the track, and have reasonable cause to believe that injury will result unless the progress of the train is arrested. That he might have been seen before he was, or that the train was running at a dangerous or illegal rate of speed, is merely evidence of negligence, which in such case does not give a right of action for the injury.

2. SAME—ACTION FOR INJURY—PLEADING.

Where it is sought to charge the willful injury of a trespasser upon a railroad track by those in charge of a train, the intention on their part to commit such injury must be directly and explicitly alleged, and an allegation of willful negligence is not sufficient.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

George F. McNulty, for plaintiff in error.

A. R. Taylor, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

99 F.—24

BAKER, District Judge. This case has been before this court, when it was reversed and remanded, with instructions to grant a new trial, and to permit the declaration to be amended. Railway Co. v. Phillips' Adm'r, 24 U. S. App. 489, 12 C. C. A. 618, 64 Fed. 823. On the return of the case a new trial was granted, and the declaration was amended by simply inserting the word "willful" in three places next before the word "negligence." The evidence on the last trial differs in no essential particular from that on the former, except that upon the last trial evidence was introduced showing that the train could have been stopped within the distance of 2,000 feet, or thereabouts. The statement of facts found in the former report of this case, except the evidence in reference to the distance within which the train could have been stopped, is adopted as a substantially correct statement of the facts in the present case. To set out the numerous instructions given and refused to which exceptions were taken would needlessly protract this opinion. The record contains 52 assignments of error. The instructions are not entirely harmonious in their statement of the legal principles applicable to the case, and it is not apparent how the jury could have reached the verdict they did, if they had been governed by the instructions given. But, as the case ought to be reversed for error in refusing to direct a verdict for the plaintiff in error, a careful examination of the other errors assigned is unnecessary.

It was decided when the case was here before that the deceased was, at the time he was killed, a trespasser or mere naked licensee on the right of way of the plaintiff in error, and, as such, that it owed him no duty of care to provide against accidents to him. We also held that the court erred in refusing to direct a verdict in favor of the plaintiff in error on the ground that the evidence was insufficient to justify a submission of the case to the jury. These rulings became the law of the case, and must control the decision on the present writ of error, unless the case made by the evidence differs in some material and controlling aspect from that made on the former trial. A careful study of the evidence which is in the record fails to disclose any material difference, except that in relation to the distance within which the train could have been stopped. That the deceased was a trespasser or mere naked licensee at the time he was killed is clearly shown, and is the settled law of the case; and as no new or additional evidence was produced, except as above stated, the court below, in obedience to the opinion of this court, ought to have sustained the request of the plaintiff in error to direct the jury to find a verdict in its favor. But, if this was the first time this case was before us, the result must be the same. The undisputed evidence shows that the deceased and his son were trespassers on the right of way of the plaintiff in error at the time he was killed. The evidence fails to show negligence on the part of the plaintiff in error or its servants which was the proximate cause of the death of the plaintiff's intestate. It is firmly settled that it is not the duty of the employés operating a railroad train to exercise care and diligence in looking for trespassers on the railway track, and that no duty of care in respect of such trespasser arises until he is seen upon or so near the rail-

road track as to show that he is liable to injury from the train moving thereon. Nor does it become the duty of the trainmen to arrest the progress of their train as soon as they discover a trespasser on or dangerously near the track. They have the right to proceed on the assumption that the trespasser, having a due regard for his own personal safety, will voluntarily withdraw from the track, and not remain in a place of known danger until he is injured or killed. It is only when it becomes apparent that such trespasser is either unaware of, or unable to avoid, impending danger, and when those in charge of the train have reasonable cause to apprehend that injury will probably result unless an effort is made to stop the train, that it becomes their duty to do so. As between the railway company and the trespasser, no duty of care to avoid injury arises until those in charge of the train have discovered his presence on or dangerously near the track, and have reasonable cause to believe that injury will result unless the progress of the train is arrested. Although the railway track may be level and straight, so that those in charge of the train by the exercise of due care might have seen the trespasser long before they did, still such negligent failure to discover his presence on or near the track will of itself constitute no actionable wrong of which he can complain. If the train is running at a high and dangerous rate of speed, in violation of an ordinance, it is mere negligence, of which the trespasser cannot successfully complain; nor in such a case would any special duty of care arise until the presence and apparent danger of the trespasser was actually discovered. Hence, even if those employed on the engine which killed the plaintiff's intestate could have seen him when he was 2,400 feet from the train, their failure to discover his presence or that of his son until the train was a little more than 700 feet from them would give no right of action. There was no evidence offered on behalf of the plaintiff below to prove that the employés on the train actually discovered the presence of the deceased or his son on or near the track until just before the accident happened. The evidence clearly shows that the presence of the deceased and his son on the track was not actually discovered by any of the trainmen until the train was within less than 800 feet from them, and that as soon as they were seen the danger signal was sounded, the emergency brakes applied, and everything was done which with due care for the safety of the train and its passengers could have been done in the exercise of ordinary care and prudence, and that the train was actually stopped within 2,000 feet or thereabouts from the point where the train was when the deceased and his son were first seen upon or near the track. The case made by the evidence was such as made it the duty of the court to grant the request of the plaintiff in error to direct a verdict in its favor. Deciding, as we do, that the court erred in refusing to direct a verdict for the plaintiff in error, it becomes unnecessary, and would not be profitable, to consider the other 51 errors assigned.

WOODS, Circuit Judge (concurring). When this case was first here, our ruling was that "the declaration  *  *  *  counts upon

negligence, and not upon willfulness, as the ground of action," and that it was therefore unnecessary to express an opinion whether, upon the facts disclosed, the action could be maintained for a willful injury. Apparently for the purpose of raising that issue the declaration was amended by inserting the word "willful" to qualify the alleged negligence, so that as amended the charge is that the defendant's servants, with gross, reckless, wanton, and willful negligence, failed to reduce the speed of the engine, and to give any signal or warning to the deceased and his child of the approach of the train by which they were run down. Manifestly, the amendment did not affect the essential character of the charge. It is one thing to allege the willful or intentional infliction of an injury, and quite another to allege the willful doing or omitting to do something which caused, or contributed to the causing of, the injury. The defendant's servants, according to the amended averment, willfully (that is to say, knowingly and purposely) failed to reduce the speed, and to give to the deceased any signal or warning of the approach of the train; but it is not alleged or implied that there was in the mind of the engineer or fireman any intention to inflict injury, or any perception that the deceased and his son were not properly regardful of the situation, and would avoid harm, as they might easily have done, by stepping aside. "Willful or intentional injury," as we said before, "implies positive and aggressive conduct, and not the mere negligent omission of duty"; and the willful omission to do something which duty requires, it is equally clear, does not of itself imply an intention to injure, and such intention should not be imputed unless directly proven, or, under the circumstances, that result must have been perceived to be probable. In other words, as a matter of pleading, it is the same whether an act or an omission to act be alleged to have been negligent or intentional. If it be sought to charge a willful injury, the intention to inflict it must be directly and explicitly alleged. As a matter of proof, it may be enough to show negligence of such gross, wanton, or willful character as to justify the inference of an intention or willingness to injure. It is easy to suppose circumstances or conditions which, if they did not in the particular case justify an omission to retard the speed of a train, or to sound the whistle sooner than it was sounded, would exclude all suspicion of bad faith. The engineer in this instance might have seen the deceased upon the track 2,000 feet away, instead of 700 feet, as he testified; and, disregarding his testimony, the jury may have inferred that he ought to have seen, and did sooner see, the deceased upon the track. But, that conceded, there is no evidence whatever to justify an inference that he entertained any purpose or had any thought of harming the deceased or his boy. The affirmative testimony of a number of witnesses is that the alarm whistle was sounded when the engine was near 700 feet from the point of collision, and against that is the testimony of a single witness that she heard neither bell nor whistle. The affirmative testimony, it is clear, ought not to be considered as overborne by the negative; but, whether the truth in this respect was one way or the other, the case was, at most, one of negligence only, against one whose position as a trespasser made a right of action on that ground alone im-

possible. That he was a trespasser upon the track of the defendant's road is conceded in the brief for the defendant in error. The trial proceeded throughout on that theory, and no question, it is admitted, was made upon the point; but it is insisted that the defendant's servants, notwithstanding the negligence of the deceased, could, after discovering the peril, have averted it by timely warning, or by slackening the speed of the train. On this point reference is made to Cahill v. Railway Co., 46 U. S. App. 85, 20 C. C. A. 184, 74 Fed. 285; Railroad Co. v. Morlay, 58 U. S. App. 526, 30 C. C. A. 6, 86 Fed. 240; Anderson v. Hopkins, 63 U. S. App. 533, 33 C. C. A. 346, 91 Fed. 77, and other cases, as overthrowing the doctrine that there can be no recovery for an injury to a person wrongfully upon a railroad track unless the injury was willful or intentional. The Cahill Case is plainly distinguishable; and the doctrine of the Anderson and Morlay Cases is manifestly not applicable here, because in this case the deceased and his son were not perceived by the engineer to be in a position of peril from which they were not likely to escape by their own exertions.

The only tangible proof of negligence which went to the jury was that the train by which the deceased was killed was running at the rate of fifty to sixty miles an hour, in violation of an ordinance of the town which forbade a speed exceeding ten miles an hour. The proof of that ordinance should have been withdrawn from the jury. It consisted of a copy of the ordinance, with a certificate of the town clerk attached, verifying the ordinance, and certifying that it was passed on July 7, 1877, and was duly published. This certificate was attached to the ordinance as found in a printed book of ordinances, which contained copies of other ordinances of the town of Venice; and it is claimed, on the statement of a witness, that a copy of that pamphlet was kept or preserved by the town board. The book, however, did not purport to be published by authority of the board of trustees or city council, and therefore was not admissible, under the statute, as evidence of the passage and publication of the ordinances found in it. Lindsay v. City of Chicago, 115 Ill. 120, 3 N. E. 443. And while, as shown by the opinion in that case, the certified copy of the ordinance was competent and prima facie evidence of the passage and publication of the ordinance, yet when it was shown, as it was, that in the original record there was no notation at the foot of the ordinance of the fact or date of publication, upon which the clerk could have based his certificate, and further was shown by the testimony of the clerk, who made the certificate, that he knew nothing of the fact, and did not intend to certify to the publication of the ordinance, but signed the certificate as prepared and presented to him by counsel for the defendant in error, the force of the certificate in that respect was destroyed, and there remained no adequate proof of the publication of the ordinance. But, if the publication of the ordinance were conceded, its violation by the defendant was, at most, evidence of negligence only, and afforded no ground for recovery for injury to a trespasser. The train by which the intestate was killed was running on time, and at its usual speed, as for two years or more it had been run, and as, to the knowledge of the de-

ceased, it had been run for six weeks or more before the date of the accident. He probably had no knowledge of the ordinance, and certainly neither counted, nor had the right to count, upon the train being run in accordance with its requirement. The judgment below is reversed, and the cause remanded, with directions to grant a new trial.