ELVIRA JAMES

*v.*

THE ILLINOIS CENTRAL RAILROAD COMPANY.

| 195 | 327 |
|-----|-----|
| 115a | 1265 |

*Opinion filed February 21, 1902—Rehearing denied April 4, 1902.*

1. TRIAL—*when an instruction to find for defendant is properly given.* Where the plaintiff in a personal injury case was a trespasser upon the defendant's tracks, the court is warranted in giving an instruction to find for the defendant if the evidence does not fairly tend to show that the defendant was guilty of willful or wanton conduct which caused the injury, or that it did not use reasonable care, after discovering plaintiff's presence and peril, to avoid injury.

2. RAILROADS—*maintenance of depot not an invitation to use tracks for private travel.* The fact that a railroad company maintains a depot or station at a certain place does not amount to an invitation to loiterers or persons having no business with the company to go upon or across its tracks for their own convenience and upon their individual business in no way connected with the company.

*James v. Illinois Central Railroad Co.* 93 Ill. App. 294, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

ROSENTHAL, KURZ & HIRSCHL, for appellant.

WILLIAM A. HOWETT, (JOHN G. DRENNAN, of counsel,) for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This was an action on the case, brought by appellant against appellee, in the circuit court of Cook county, for personal injuries alleged to have been received on the 31st day of October, 1890. The place where the accident occurred was at a crossing at South Chicago between Seventy-fifth and Seventy-sixth streets. The declaration contained six counts. Three of them averred, with reference to the place where the injury was incurred, that appellant "was walking upon and along a certain

tract of land with the defendant's permission and invitation, then and long prior used by the public in general as approaches to its trains and depot and appearing to be a public highway." Three other counts charged that the place where the injury was received was a public highway, and general negligence and the statutory omissions to ring bells and sound whistles were set out. The cause was heard, and upon the conclusion of plaintiff's evidence the court directed a verdict for the defendant, and on appeal the Appellate Court for the First District affirmed that judgment.

But two matters are urged as ground for reversal: First, the giving of the instruction directing a verdict for defendant; and second, the refusal to admit in evidence a certain plat offered by appellant.

Appellant lived on Drexel avenue, between Seventy-fifth and Seventy-sixth streets, and which was some five or six blocks west from the place where the injury was incurred. She had spent the night preceding the accident at the Kemp Hotel, which was on Seventy-sixth street and east of appellee's railroad. The place where the injury occurred is a mesh of railroad tracks. The Illinois Central has four tracks running practically north and south; and running north-westerly and south-easterly across the Illinois Central, in this block between Seventy-fifth and Seventy-sixth streets, are two other railroads,—the Lake Shore and Michigan Southern and the Fort Wayne,—each having double tracks and lying together and running parallel with each other, but so crossing the Illinois Central railroad as to form a double "x." On the east side of the Illinois Central railroad, and between the other two roads that cross it, was a depot, in which the evidence shows was maintained a day telegraph office. The Kemp Hotel, where appellant spent the night, was on the south side of Seventy-sixth street and near to the south side of the Fort Wayne tracks, and between two and three hundred feet from the crossing of

the latter tracks and the tracks of the appellee. Appellee's statement is, that she started on the morning of the injury to the depot building to send a telegram; that she went on Seventy-sixth street, and there crossed a bridge across a ditch and near the Fort Wayne tracks, that led her on to a little walk leading along the south side of these tracks and also to a walk that led almost directly north across those tracks to the depot; that when she got across this bridge she was eighty or ninety feet from the crossing of the railroads and about the same distance from the depot, and that there it occurred to her that the telegraph operator would not be at the office that early in the morning, and she then changed her mind about going to the depot and concluded to follow the Fort Wayne tracks in a north-westerly course until she should strike Seventy-fifth street, upon the theory that she would probably meet the operator on his way to the office, and if she did not, that she would find him at his home, as he lived near to her home, and so instead of following the walk and street and going on toward the depot, she says she kept on the south side of the track of the Fort Wayne road and went up to the crossing of it and appellee's road. She says further, that when she came out from the hotel on Seventy-sixth street and looked west she saw standing on the appellee's road a freight train, which she says was a long train and was standing still. She never noticed this train any more until she was on appellee's track and shortly before she was struck by it as hereinafter stated. She followed this side of the Fort Wayne tracks up to appellee's tracks. The tracks of appellee were four in number, and were numbered from the west to the east. The track nearest to her was No. 4 and the one next to it was No. 3. Nos. 1 and 2, on the west side, were tracks used for suburban trains, and the evidence shows that a train came in from the north and stopped on track 1 and a train also pulled in from the south on track 2, both being suburban trains.

In some manner not explained by her or by the evidence at all, instead of staying on the south side of the tracks of the Fort Wayne road appellant got across the Fort Wayne road, between it and the Lake Shore road, on the north side of said Fort Wayne road and at the east edge of appellee's tracks, some forty or forty-five feet north of the Fort Wayne track and from the walk on the south side thereof, which walk she said she was going to follow on her course to meet the operator. At the place she was, there is no evidence showing that there was any walk or crossing over the tracks, nor is any reason shown why she sought or attempted to cross at that particular place. She states that as these suburban trains were in and one of them was about to move, she saw a man at the rear end of one of them give a signal by motioning his hand; that she did not know whether it was a signal for her or for whom, but taking it to be for her, she moved ahead to cross appellee's tracks; that she first crossed track No. 4; that shortly before she had started, and while she was standing directly opposite and east of the point where she was struck, she says she looked south and saw the freight train still standing there, and thinks it was perhaps two hundred feet away from her. After crossing track No. 4, and just as she had reached the first rail of track 3 and was about to step on to the track, she was struck by the engine of this freight train, that was moving at the rate of about five or six miles an hour. It could not have been going rapidly, as one of the witnesses who testified for her saw the engine strike her and throw her forward, and he jumped in front of the train and pulled her out and saved her life, the only injuries being severe bruises and shocks. It is also in evidence that just before she went upon this track, a moment before she was struck, some one at the baggage-room of the depot hallooed to her and tried to warn her of the danger. She says that she was looking northwest, her attention being attracted by the suburban

trains moving on tracks 1 and 2, and did not think of and did not see or hear the train that struck her, from the time she saw it standing down near Seventy-sixth street until she was struck by it. The proof showed also that neither the engineer nor any one in charge of the freight train saw her or realized that she was in peril, or had any reason to suppose that she was going to cross the track, until the engine was within four or five feet of her, when the whistle was sounded and alarms given. The greater weight of the evidence shows that no bell was being rung and no whistle being sounded until the time, or about the time, she was struck. The evidence shows that the view was unobstructed, and trains could be easily seen for five or six miles, looking to the south.

It is claimed that the place where the appellant was struck was a public highway and was part of Woodlawn avenue, which is an avenue that runs north and south, with some interruptions, for a number of blocks. In the effort to prove that the place was a street, one Paul Cornell testified that he had lived in Chicago fifty years and had been a property owner in the vicinity of this injury since 1855; that the Illinois Central railroad tracks were laid where they were at the time of the accident, in 1852 or 1853; that he was the owner of the Grand Crossing Hotel, (now the Kemp House,) and had made some walks for the use of his hotel up toward the depot some fifteen or twenty years ago, and that he had platted certain properties adjacent to the scene of this injury in 1872 and had lived many years in that vicinity. He stated further that Woodlawn avenue, from Seventy-fifth or Seventy-sixth street, was not a traveled public highway; that there has never been any work or grading done, except that for the railroads; that it has never been traveled by the public with horses and vehicles and wagons, and that it could not be because of the railroad tracks; that the line of Woodlawn avenue would lie right along over the tracks of appellee, running north and

south; that there is nothing there but railroad tracks; that the railroad right of way there is two hundred feet wide, and that it had never been condemned, to his knowledge, and that he would have known, as he had owned property there since 1855, and that to his knowledge there had never been any action taken by the public authorities by actual work or legal proceedings for opening that avenue between Seventy-fifth and Seventy-sixth streets. A plat of adjacent properties, which this witness had, was offered in evidence and rejected. This witness did not pretend to have ever owned the ground where the right of way and injury were, and any plat made by him of adjacent lands in 1872 could not have proved a dedication of appellee's right of way over its tracks to the public for a highway, and was properly excluded. This was practically all the evidence with reference to the public character of the place where this injury was received, except the general evidence that a station was maintained there and that people alighted there from trains and frequented the station on telegraph business. The appellant also stated that she had lived there a number of years; was well acquainted with the tracks, and knew that the first and second tracks were used for suburban trains and that the third and fourth tracks were used for heavy freight trains, and that early in the morning, at the time she was injured, being about 6:30, the traffic on the appellee's road at that point was heavy, and greater than later in the day.

From this brief statement and a review of all the evidence it seems clear to us that appellant utterly failed to show that the place where the injury was received was a public highway, and also failed to show that she had any legitimate business or purpose at the place where she was injured. When she was twenty feet away from Seventy-sixth street,—the street that the evidence shows she should have followed to reach her home and the nearest and ordinarily traveled route,—she had made up

her mind that she would not go to the station to send the telegram in question, and the only purpose that she had or gave for going where she did, at all, was that she might meet the operator on his way to the station. After having determined that she would not go on a business mission to the station in the vicinity of the injury, she traveled on the right of way of appellee something near one hundred and twenty feet, when she attempted to cross the tracks in a place where nobody was invited to cross and where she had no business to be. Appellant states, however, that she was rightfully there because appellee had a station there or near there, and that by maintaining the station the place became a *quasi* public place, to where all the pubic had a right to go, and in support of that contention cites a number of authorities, none of which we think apply. It is true that we have held in a number of cases that railroad stations are *quasi* public places, and that the public, for certain purposes, are invited there and that they are not trespassers when they go there; but no case is cited, and we think none can be found, in which it has been held that the railroad tracks adjacent to a railroad station are public places or such places as the public are invited upon or have a right to be, unless it be shown that it was for some purpose connected with the business between such parties and such railroad company or in company with some person having business with such company. In other words, we do not understand the law to be that because a railroad company maintains a depot or station along its line it thereby invites loiterers or persons having no business with it to go from the platforms of the station and travel upon or across its tracks for their individual convenience and upon their individual business in no manner connected with such railroad. As we view this evidence, appellant was as much a trespasser at the place where she was and under the circumstances as if there had been no railroad station there. From the place where she was

injured north to Seventy-fifth street was over two hundred and fifty feet, and south to Seventy-sixth street, where the freight train had stood, was also over two hundred and fifty feet, and the place not being a public highway, the appellee company was under no obligation, for the protection of trespassers and loiterers, to keep its bell ringing or its whistle sounding from one street crossing to the other. It owed no duty to appellant until it or its servants in charge of its train saw appellant. When they did see appellant it was their duty to use reasonable care to avoid injury to her, but the evidence shows that she was not seen until the engine was within five feet of her, when it was too late for anybody in control of the engine to save her from being struck by it; that the whistle was then sounded, the engine reversed and effort made, but to no avail. She also says that she was looking in a direction away from the one whence the engine was coming, and under the circumstances shown in this case it cannot be said that she was using any care whatever for her own safety, but seemed to have given that no thought at all. The evidence offered by appellant, with all the reasonable inferences that could be drawn from it, does not fairly tend to show that the appellee was guilty of wanton or willful conduct that caused the injury to appellant, or that appellee did not use reasonable care after discovering appellant's presence and peril, and the court was warranted in giving the instruction directing a verdict for defendant. *Illinois Central Railroad Co.* v. *O'Connor*, 189 Ill. 559; *Illinois Central Railroad Co.* v. *Godfrey*, 71 id. 500.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*