TEXAS & P. RY. CO. v. MODAWELL.

(Circuit Court of Appeals, Fifth Circuit. February 12, 1907.)

No. 1,579.

1. RAILROADS—INJURY TO PERSON ON TRACK—GROUNDS OF LIABILITY.

The only duty owing by a railroad company to a trespasser on its tracks, away from a public crossing, is, at the most, to do all it reasonably can to prevent injury to such trespasser after discovering his peril.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1238.]

McCormick, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

This was an action brought by George W. Modawell against the Texas & Pacific Railway Company to recover damages for an injury which he sustained by being run over by the cars of the defendant company while walking along its track in the parish of Pointe Coupee, La., near Morganza station. An extract from the plaintiff's declaration will show his case as presented to the court: "Your petitioner shows that the said railroad company was at the time constructing a roadway from New Roads to Torras station, in the parish of Pointe Coupee (making an embankment and placing thereon cross-

ties and rails on which to run their trains); that the road was in course of construction, the ties and rails having been laid from New Roads to above Morganza station; that the said company was at the time filling in the roadbed with earth and was running construction trains over same; that an embankment of earth about 2½ feet high was on either side of the rails; that your petitioner was walking on the track on his way home; that said roadway was used by the general public; that a construction train drawn by engine No. 117, consisting of a number of flat cars loaded with earth, passed up above the Fordoche or Morganza crossing; that your petitioner seeing the said train coming stepped off of the track permitting same to pass, that he stepped back upon the track and continued to walk on same on his way home; that he was at the time near the station of the Texas & Pacific Railway in this said parish and known as Morganza station, and also near the railroad crossing known as Fordoche crossing; that the said construction train passed up above the said station, passed the public crossing, and a few moments later returned down the track, running backwards on their way to the New Roads station; that the said engine No. 117, with cars attached and running backwards, ran into him from behind; that he had no warning of the approach of the train until same was upon him · that he at once jumped off of the track, falling upon the embankment of earth on the side of the track; that the loose earth caused him to slip back, and his left foot was run over by the said cars and engine, and that same was crushed by the said cars and engine of the said Texas & Pacific Railway Company."

In his testimony on the trial of the case the plaintiff said: "It was at Morganza, Pointe Coupee parish, in the afternoon between sundown and near dark. I had been working the whole day and was walking along the track. * * * It was, I think, the 9th of December, 1901. * * * And I started back home and met the train and stepped off of the track, and it passed, and I stepped back on the track again, and it came back, backing backwards, and it run onto me before I knew it. I just heard her rumblings, looked back, and jumped on—there was an embankment of earth at the side where I jumped. They were preparing to raise the roadbed, and I jumped off and fell back, and one foot was crushed off." The witness then stated, "It was just a little before dark," but was "tolerably light," and you could see or discern objects. He then stated that it was only a few moments after the train met him when he stepped off of the track until it came back. The cars were so near him when they came back and he jumped from the track that he threw out one hand and caught against the car. Another man named Sanchez was with him when he jumped off on one side, and "he jumped the other way and was not hurt." Further on in his testimony, on cross-examination, the plaintiff said: "Q. Now, you say you jumped? A. Yes, sir. There was an embankment of earth on either side of the track. Q. How was that embankment out there? A. Unloaded from flat cars. Q. What were they going to do with it? A. I think preparatory to raising the roadbed. Q. You are a carpenter, and I suppose you understand that this earth is taken on flat cars, then it is plowed off on both sides of the track, and then they jerk the track up and slide dirt there and put the track back on this concrete. That is what they were purposing to do there? A. Yes, sir. Q. Then, this day, on each side of the track there was a mound which had to be in that shape—conical—hand't it? How high was that? A. Well, I did not notice. I suppose somewhere near two feet high. Q. Soft dirt, or had it been there a good while? A. It had been settled down. It was tolerably hard, but slippery. Q. Slippery? A. Yes, sir. Q. You say when you jumped you got clear off the track. Is that right? A. I jumped to jump clear off the track, and my foot slipped on that embankment right by the track, and my foot was caught by the car."

The above fairly presents the facts and circumstances connected with the accident to the plaintiff. The trial of the case resulted in a verdict for the plaintiff, and the case is here on exceptions to instructions given and refused in the Circuit Court.

Charles P. Cocke, for plaintiff in error.
M. T. Hewes, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEW-MAN, District Judge.

NEWMAN, District Judge (after stating the facts). The exceptions in this case raise the important question as to whether the court erred in instructing the jury in this case as follows:

"Therefore, the main questions for you to decide are whether the railroad was at fault in the manner in which it operated its train on the occasion in question; whether that fault—if there was fault—was the proximate cause of the injury; whether the plaintiff contributed by his negligence to his injury; and whether, even if the plaintiff was himself at fault and negligent, and thereby helped to bring about the injury, the defendant railroad company could by the exercise of due care and diligence have avoided the accident. If it could have done so and did not do it, it would be liable."

And in refusing to give at the request of defendant's counsel the following:

"Under the circumstances of this case, the plaintiff being a trespasser upon the tracks of the railroad company, it owed him no duty except to exercise proper care to endeavor to save him from injury after his presence on the track and his peril were discovered."

And also the defendant's request as follows:

"The burden is on the plaintiff to prove to you by a preponderance of credible evidence three things, to wit: (1) That he was discovered by the defendant's employés in a position of peril; (2) that he was discovered in time for the injury to have been averted by the exercise of reasonable care on the part of the defendant's employés; and (3) that defendant's said employés failed to use reasonable care and diligence to avoid the injury after discovering the plaintiff's peril, notwithstanding that they had time and opportunity to use such care. Failing to prove to your satisfaction any one of these three things, the plaintiff is not entitled to recover in this case."

Other requests along the same line were made raising the question stated above as to whether the defendant company owed the plaintiff any duty except to do what it could to avoid injury after his peril was discovered.

The learned judge trying this case in the Circuit Court based his ruling, which resulted in his charge as given above, and in refusing to charge as stated, on the case of Turnbull v. New Orleans & C. R. Co., 120 F. 783, 57 C. C. A. 151. Decisions of courts must always be taken, to some extent at least, in connection with the facts in the case decided. The Turnbull Case was one of injury to a child eight years of age, at a public crossing; and that there is a marked difference between that case and the instant case, where a man of mature years was walking along the track of a railroad company away from a crossing, is apparent. In the Turnbull Case, in the opinion by Circuit Judge McCormick, this language was used:

"After a careful examination of a number of recent decisions of the courts of highest authority and of the most approved text writers, we conclude that the requested charge was not too broad, and was not misleading, and that the excerpt from the trial judge's general charge does not fully state the true rule, but omits to instruct the jury that, if the motoneer ought to have discovered the danger of the child in time to save it, he could recover, notwithstanding his own contributory negligence."

Undoubtedly, if a motoneer, operating a street car approaching a public crossing of a street, ought to have discovered the peril of a child eight years of age on the crossing in time to save it, the company would be liable. Approaching a street crossing where people at any time are liable to be and almost certainly are, is an entirely different thing from running a railroad train along the track in the country away from crossings, and where the engineer in charge of and operating the train has no reason to expect the presence of persons on the track. In the first instance, the person is where he may lawfully be; in the second instance, he is clearly and under all the authorities a trespasser. We think the rule is too well settled in the courts of the United States to be now questioned that the only duty owing by a railroad company to a trespasser upon its tracks away from a public crossing is, at the most, to do all it reasonably can to prevent injury to such trespasser after discovering his peril. Some of the cases hold that the only duty is that of ordinary care to prevent injury; but the most extreme view that can be taken of the adjudged cases is that the employés of a railroad company should do everything they reasonably can to prevent injury after discovering the trespasser's presence on the track.

In the case of Sheehan v. St. Paul, etc., Ry. Co., 76 Fed. 201, 22 C. C. A. 121, in the opinion by Judge Seaman, the question here involved is discussed in this way:

"What is the duty which a railway company owes to a trespasser on its tracks, and how and when does the duty arise? The decisions upon this subject uniformly recognize that the trespasser cannot be treated as an outlaw; and, at least, that, if wantonly injured in the operation of the railroad, the company is answerable in damages. Clearly, then, an obligation is placed upon the company to exercise some degree of care when the danger becomes apparent. Is 'it, however, bound to foresee or assume that rational beings will thus enter as trespassers in a place of danger, and to exercise in the running of its trains the constant vigilance in view of that probability which is imposed for public crossings? There are cases which would seem to hold this strict requirement (see note 1, Thompson, Negligence, 448; Railroad Co. v. St. John, 5 Sneed (Tenn.) 524, 73 Am. Dec. 149; but, by the great preponderance of authority in this country and in England, the more reasonable doctrine is pronounced in effect as follows: That the railroad company has the right to a free track in such places, that it is not bound to any act or service in anticipation of trespassers thereon, and that the trespasser who ventures to enter upon a track for any purpose of his own assumes all risks of the conditions which may be found there including the operation of engine and cars. * * * The obligation of the company and its operatives is not, then, pre-existing, but arises at the moment of discovery, and is negative in its nature—a duty, which is common to human conduct, to make all reasonable effort to avert injury to others from means which can be controlled."

To the same effect are Singleton v. Felton, 101 Fed. 526, 42 C. C. A. 57; L. & N. R. Co. v. McClish, 115 Fed. 268, 53 C. C. A. 60; Cleveland, etc., R. Co. v. Tartt, 64 Fed. 823, 12 C. C. A. 618; Id., 99 Fed. 369, 39 C. C. A. 568, 49 L. R. A. 98. In St. Louis, etc., Ry. Co. v. Bennett, 69 Fed. 525, 16 C. C. A. 300, the rule on the subject is stated in the following language:

"The only duty which a railroad company owes to those who, without its knowledge or consent, enter upon its tracks, not at a crossing or other like public place, is not wantonly and unnecessarily to inflict injury upon them after its employés have discovered them. It owes them no duty to keep a lookout for them before they are discovered, because they are unlawfully up-

on the tracks, and the railroad company is not required to watch for violations of the law."

Mention has been made here of the case of Inland Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270, as announcing a doctrine in line with that held by the trial judge to be applicable in this case. In the Tolson Case, the plaintiff had his foot crushed between the timbers of a wharf by the violent striking of a steamboat against the wharf while touching there to receive freight from him, and the questions of negligence, contributory negligence, and secondary negligence on the part of the defendant arose. That nothing was decided in that case differently from the rule as stated above will be apparent from an extract from the opinion by Mr. Justice Gray as follows:

"It was argued that this instruction was inapplicable, because there was no evidence that the defendant knew the peril of the plaintiff, or had either time or opportunity, by the exercise of any degree of care, to guard against it; that if his negligence consisted in standing in a dangerous position too near the edge of the wharf, the defendant was not bound to anticipate his remaining in that position; but that his negligence in fact consisted in placing his foot between the flooring and a fender pile, which the defendant could not have been aware of or guarded against. It is true that the instruction could not apply, and therefore could not be understood by the jury to apply, to the latter alternative. But upon the question of the plaintiff's position and attitude the evidence was conflicting; and it was indisputable that the steamboat was approaching the wharf at his call, and for the purpose of receiving freight from his hands, and that her pilot and officers saw him as he waited on the wharf. The jury might well be of opinion that while there was some negligence on his part in standing where and as he did, yet that the officers of the boat knew just where and how he stood, and might have avoided injuring him if they had used reasonable care to prevent the steamboat from striking the wharf with unusual and unnecessary violence. If such were the facts, the defendant's negligence was the proximate, direct, and efficient cause of the injury."

Reference is also made to the case of Railroad Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, which was a case of a person injured at a street crossing in the city of Detroit, and that fact distinguishes it clearly from the case now under consideration. The distinction between the case of a person crossing a street railroad or a steam railroad track at a public crossing where the person has a right to be and may be expected to be, and that of a trespasser walking along the tracks of a railroad company where the person has no right to be and cannot be expected to be, cannot, we think, be too strongly emphasized; for, in the one case he is exercising a lawful right, whether carefully doing so or not, in the other, he is doing what he may not rightfully do, at least, without taking the risk involved.

In some jurisdictions, but not many, it is held that the duty to trespassers is to do all that can reasonably be done to prevent injury after their peril is discovered, or "in the exercise of ordinary and reasonable care it should have been discovered." Even this rule, if assented to, would have required a modification of the charge of the trial judge.

The charge on the precise point in issue here was "whether, even if the plaintiff was himself at fault and negligent, and thereby helped to bring about the injury, the defendant railroad company could by the exercise of due care and diligence have avoided the accident."

This charge omits to state either that the duty arose after the peril of the injured person was discovered or, in the latter view of the law we have referred to, "by the exercise of ordinary care, could have been discovered." We hold, however, that the correct doctrine is, as supported by overwhelming authority, certainly in the courts of the United States, that the only duty the railroad company owed to the plaintiff in this case, he being clearly a trespasser, was to do all that reasonable care and prudence would suggest, under the circumstances, to avoid injuring him after his presence on the track and his peril were discovered.

The charge, failing entirely to present this view to the jury, and the trial judge having refused, although specially requested, to present it, we think there was error which requires that the judgment of the Circuit Court should be reversed, and a new trial granted, and it is so ordered.

McCORMICK, Circuit Judge (dissenting). The eminent judge before whom this case was tried in the Circuit Court had presided in that court on the trial of the Turnbull Case, and he has placed on record his "reasons for refusing new trial" in this case. It seems to me that these reasons have not been duly considered by this court, and I therefore set them out in full as stated by that distinguished judge as follows:

"The court's rulings at the trial, complained of by the defendant company, were, in view of the facts in this case, correct and in strict conformity with the doctrine set out in the opinion of the Circuit Court of Appeals for this circuit. in the case of Turnbull v. N. O. & C. R. R. Co., 120 Fed. 783, 57 C. C. A. 151. It was there plainly held, on a full and careful review of the authorities, that, notwithstanding the old rule as to contributory negligence, a plaintiff who is guilty of the want of ordinary care contributing to his injury may still recover from the defendant, if the defendant might nevertheless have avoided the injury by the exercise of ordinary care on his part; and that when the defendant is driving an instrument of danger, such as a railway train, or is doing something of such a nature that, unless extreme caution is used, it is likely to lead to mischief, the law conforms to the dictates of humanity, and enforces the plain obligation or moral duty to keep constant lookout and to exercise unremitting diligence. In the Turnbull Case it was also plainly held that the defendant operating a dangerous instrument (an electric street car, in that case) was responsible notwithstanding the defense of contributory negligence, although the defendant's servant did not in fact discover the danger to the plaintiff's child in time to avoid injuring him, provided he could have discovered the danger in time by the exercise of reasonable care. In fact, this was the crucial point in the case, the trial judge having conceded and charged that if the danger was discovered in time by the defendant's servant, the plaintiff could recover notwithstanding contributory negligence. The Court of Appeals distinctly held that the defendant was liable, regardless of the defense of contributory negligence, if the defendant's servant, for whom it was responsible, ought to have discovered the danger in time and did not do so.

"It was argued at the trial of this cause on behalf of the defendant railroad company that the Turnbull Case is not authority in this case, because it did not deal with an accident occurring on the private right of way of a steam railroad company where persons, as it was claimed, are trespassers, but that the Turnbull Case dealt with an accident on the tracks of a street railway, in the public streets of a city, where the injured person was not a trespasser. But it is unquestionably clear that the Turnbull Case made no such distinction. All the propositions therein are stated broadly and without re-

striction. In the Turnbull Case, the appellate court approved the case of McClanahan v. V., S. & P. R. R., 111 La. Ann. 782, 35 South. 902, involving an accidental killing on the defendant's right of way, the facts of that case being, in my opinion, much weaker against the defendant than the facts in this case. In the McClanahan Case, McClanahan was lying across the railroad track, intoxicated. The train was running front end forward. It had a lookout, the engineer, who discovered McClanahan, but not quite in time, and who made all reasonable efforts to save him. It was held that McClanahan was not a trespasser, and that his heirs could recover.

"As to the suggestion of defendant's counsel that the Turnbull Case did not in fact present the question of contributory negligence, because it involved a child who was not in law chargeable with negligence and not an adult, as in this case, it may be said that the opinion in that case, while stating that the 'last chance' rule 'especially arises in favor of children, the aged and infirm,' does not in any way limit or restrict the doctrine to such persons. The entire reasoning of the opinion plainly applies to all persons. Saying that the rule applies especially to certain persons cannot, by any process of logical reasoning, be understood to mean that it applies only and exclusively to those persons. The injured person in the Turnbull Case was a child over eight years old, bright and intelligent, and there is not even an intimation by the Court of Appeals that, as matter of law, he was not chargeable with negligence. The action was twofold. The father sued as the child's heir for the child's suffering; and the father also sued for the injury caused to himself by the death of his child. As it was proven that the child died instantly, the case failed on the proof as to the first cause of action and, therefore, the child's negligence, which concerned only that part of the case, became immaterial. However, the court submitted the first cause of action to the jury, leaving them to pass on the question of contributory negligence vel non of the child, with proper instructions as to the measure of care to be applied to a child. The second cause of action (that is, the father's personal claim for damages) was also submitted to the jury, leaving them to pass on the question of contributory negligence vel non of the grandfather of the child, who was in charge of the child at the moment of the accident. This involved no question of imputed negligence. For it is not to be doubted, I believe, that a father suing for damages for his own benefit, because of his child's death, is chargeable with his (the father's) own and his agent's negligence contributing to the death. The grandfather, as a witness for the child's father, testified that holding the child by the hand, he walked up to the railroad track, looked in the direction in which the car came, saw no car, though his eyesight was good and there were no obstacles to prevent him from seeing, and yet, that instantly upon his stepping on the track, he was knocked down by a car and the child killed by it. The entire matter on both causes of action was submitted to the jury.

"By thus referring to the facts in the Turnbull Case, it is plainly shown that even though all the evidence was not before the Court of Appeals, the contentions in this case that the Turnbull Case is not applicable are without force, and that as in that case it was held that the trial court committed reversible error in refusing to charge that the father could recover notwithstanding the defense of contributory negligence, even if the motoneer did not discover the danger of the child in time to avoid the accident, provided the motoneer ought to have discovered the danger in time—then, it cannot be doubted that in the present case, in which the facts are so much stronger against the defendant, it was the unmistakable duty of the court to instruct the jury in accordance with the views of the Appellate Court, to which this court does always unreservedly conform. This cause, as already stated, is far stronger against the defendant than were the Turnbull Case and the McClanahan Case. In this case, the train met the plaintiff and then almost immediately backed down on him without bell or whistle or other signal and ran him down in daylight, one or two hundred yards from the depot and village. That the defendant was guilty of the grossest negligence cannot, it appears to me, be doubted. The negligence is, I take it, practically admitted by the state of the evidence. And that the exercise on the defendant's part of the most ordinary care and prudence would have prevented the accident is

obvious. Plaintiff had just met the train. If the train, running front end forward, had a lookout in front, he must have seen that plaintiff was using the right of way, and he must have known that by immediately backing he would endanger the plaintiff. If the train had no lookout when it first met plaintiff, then defendant was doubly guilty in running trains without lookouts, both forward and backward, and especially so near a depot and village. Even if the question of the plaintiff's contributory negligence is, under the circumstances, to be considered, there was proof from which the jury was fully warranted in finding that he was not negligent. The jury may have found that it was not contributory negligence on plaintiff's part, under the circumstances, to fail to foresee that the train would or might almost immediately back down on him without bell or whistle or other warning, and the jury may have also found that the mere rumbling of the train was not necessarily an indication to him, under the circumstances, that the train was backing down. At that short distance, the rumbling did not indicate any more the backing down of the train than its continued receding. An attempt was made by the defendant to show that the plaintiff was intoxicated. If he was, that fact would only bring his case into closer analogy to the McClanahan Case."

After carefully re-examining our decision in the Turnbull Case, and fully considering the case now before us, I concur in the views expressed by Judge Parlange as given above, and hence must dissent from the decision and opinion announced herein by my Brethren.