## Maude Neice, Administratrix, Appellee, v. Chicago & Alton Railroad Company et al., Appellants.

1. EVIDENCE—*what part of res gestae.* Whenever a declaration is made explanatory of an act and in connection with the act it is admissible.

2. HUSBAND AND WIFE—*competency of latter.* At common law the wife was incompetent to testify as to conversations had between herself and husband, and this rule still obtains in this state except as modified by section 5 of the Evidence Act.

3. EVIDENCE—*when incompetent, given by wife, will not reverse.* If the wife of the intestate be permitted to give incompetent testimony as to conversations had with the intestate, such error will not reverse where such conversations were fully proven by other competent testimony.

4. NEGLIGENCE—*when trespasser cannot recover.* Where persons for their own convenience travel upon the right of way of the railroad company they are trespassers and a railroad company owes no duty to such trespassers except not wantonly to injure them. *Held,* in this case, however, that the facts did not bring the plaintiff's intestate within the rule.

5. NEGLIGENCE—*duty of railroad at depot grounds.* The courts make a clear distinction as to the rights of persons about the depot, and its connecting platforms, and persons on the right of way from the depot, and of the duties of railroad companies to look out for persons in and about depot grounds, and where people are liable to be more than in and about private places in and along their railroad right of way.

6. NEGLIGENCE—*how question as to whether person injured is trespasser, determined.* *Held,* under the evidence in this case,

that it was a question of fact for the jury to determine under instructions from the court whether the plaintiff's intestate was a trespasser or rightfully upon the railroad company's property.

6. TRIAL—*when arguments of counsel will not reverse.* If an objection was sustained to the arguments complained of a reversal will not be awarded unless prejudice was created which the sustaining of the objection did not remove.

Action in case for death caused by alleged wrongful act. Appeal from the City Court of Granite City; the Hon. J. M. BANDY, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911.

WARNOCK, WILLIAMSON & BURROUGHS, for appellants; J. A. CONNELL, of counsel.

D. J. SULLIVAN, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This action was brought by appellee against the appellants, in the City Court of Granite City, Illinois, for loss sustained by her by reason of the death of her husband, L. B. Neice. Trial was had by a jury resulting in a verdict of $3,500 for appellee, on which judgment was rendered, and the case was brought to this court by defendants on appeal.

The declaration, as disclosed by the record, consists of six counts and are denominated the first and second additional counts, and amended first, second, third and fourth counts, and the cause was tried upon the additional and amended counts.

The first additional count alleges that the Chicago and Alton Railroad Company on the 8th of March, 1910, and for a long time prior thereto, was possessed of and operating a certain line of railroad extending through the county of Madison, and in and through the city of Venice, over which road the Chicago and Alton Railroad Company knowingly permitted the Chicago, Burlington and Quincy Railroad Company to operate its trains; that deceased was standing upon

the platform of the Chicago and Alton Railroad Company at its depot in the city of Venice, where the said railroad track is crossed by a board walk used and frequented by many people with the knowledge and consent of the defendant; that on the date aforesaid the Chicago, Burlington and Quincy Railroad Company, wilfully, wantonly and in reckless disregard of the safety of persons who might be on said platform and walk, drove an engine and train of cars on the said track in the said city of Venice, where plaintiff and other persons were standing, at a dangerous rate of speed, to wit, thirty miles an hour, without ringing the bell or blowing the whistle, and without any headlight, and without the engineer keeping a proper lookout, whereby the said engine was driven against the intestate causing him injuries from which he died and left Maude Neice, his widow.

The second additional count is the same as the first, except that it gives the location, surroundings, depot and platform more in detail, and avers that the deceased had come to the said depot for the purpose of going to Roodhouse, Illinois, upon one of the trains of the said Chicago and Alton Railroad Company then approaching said depot, and while waiting upon the platform constructed by the railroad east of its depot, which depot and platform were used and frequented by a large number of persons going to and from said depot, which fact was known by the said defendants, and while waiting upon the said platform the said Chicago, Burlington and Quincy Railroad Company, did wantonly and wilfully operate, by its servants, its train at a high rate of speed without ringing the bell, sounding a whistle or having a proper head-light upon the engine, etc.

The amended first count describes the roads and location of the depot and platform substantially the same as the first additional count, and avers that while the deceased was standing upon the platform in the act of leaving the depot, to which place he had gone

for the purpose of obtaining information with reference to being carried, and to be carried by the Chicago and Alton Railroad Company to the city of Roodhouse, and while in the exercise of ordinary care for his safety, the defendant, Chicago, Burlington and Quincy Railroad Company, by its servants, negligently, carelessly and recklessly ran a train of cars along the said Chicago and Alton Railroad track, and drove its engine against the deceased, thereby injuring him, from which injuries he died.

The amended second count is the same as the amended first count, except that it sets forth an ordinance in the city of Venice prohibiting any railroad company from operating passenger trains within the city limits at a greater rate of speed than ten miles an hour, and freight trains at a greater rate of speed than six miles per hour.

The amended third count is the same as the amended first count, except that it avers that the defendant, Chicago, Burlington and Quincy Railroad Company, negligently and carelessly ran and operated the engine and train of cars along and upon said track of the Chicago and Alton Railroad Company without ringing a bell or blowing a whistle, and without having a head-light burning upon said engine, and driving said engine at a high and dangerous rate of speed.

The amended fourth count is the same as the amended second count, except that it sets forth an ordinance of the city of Venice requiring every railroad company operating its road in the night time to keep a bright light conspicuously displayed on the front and rear ends of all trains while in motion, and avers that the defendant, Chicago, Burlington and Quincy Railroad Company, operated a train on the said track without having a bright light displayed on the front end of said train while in motion.

The facts, as disclosed by this record, are that on and prior to March 8, 1910, the appellants were pos-

sessed of three parallel tracks extending in a northerly and southerly direction. The track farthest west was called a running track and used for storage; the second track is eight or ten feet east of this one and is used for south-bound traffic towards East St. Louis by the appellants and the Big Four Railroad Company. The third track is owned by the Big Four Railroad Company, and is ten or twelve feet east of the second track and is used for north-bound traffic by appellants and the Big Four Railroad Company, and east of this track, a distance of about seventy-five feet, is the main line of the Wabash Railroad. The passenger depot of appellants is located west of the first of the above described tracks, and nearly opposite and west of Weber street. There is a board walk extending from the depot east across the running track and the Chicago and Alton track, used by passengers going to and from the train, and by other persons having business with the company coming to and going from the depot. At the time of the accident in question there was a platform approximately fifty feet long constructed between the Chicago and Alton and the Big Four Railroad tracks, and connecting with the cross walk above mentioned. Between the Big Four and Wabash tracks and about opposite the south end of the depot is a plank foot bridge with railings thereon, the west end of which extends to within a few feet of the east rail of the Big Four track. The east end of this bridge extends to within a few feet of the west rail of the Wabash Railroad, and is opposite the south line of Weber street. These walks and the platform were used by persons traveling to and from the depot, and by other persons in that vicinity. On and prior to March 8, 1910, the deceased and his wife had been living at his father-in-law's about two or three miles north of Venice, and on this day the deceased had returned from a trip to Roodhouse, Illinois, where he had been in search of employment, and during the day he and his wife were packing their goods preparatory

to moving to Roodhouse. About six o'clock in the evening the deceased left his home dressed in his working clothes and carrying a lantern. On his way to Venice he met one of the witnesses, who observed him with this lantern, and arrived at the depot in Venice between seven and eight o'clock. At that time the local passenger trains of the Chicago and Alton going north and south had all passed through Venice and the station was closed except a couple of lights were left burning for some of the train men or clerks. At this time there was a freight train called No. 92 of the Chicago and Alton Railroad, hauling stock, that was expected by the train men and a Mr. Pease, a witness, to stop at the depot for the purpose of taking Pease, who had stock on this train, aboard of it. As this train pulled in a witness by the name of Sitton saw Neice standing between the Chicago and Alton and Big Four tracks, and Neice inquired of the witness about this train and who was on it, and the witness told Neice he did not know who was the conductor but that a man by the name of Mitchell had been on it as conductor. Neice did not tell why he wanted to know the crew. While witness Pease was standing between the Chicago and Alton and Big Four tracks and as the Chicago and Alton No. 92 approached, the deceased also stepped on the platform and asked Pease if he knew if No. 92 was going to pick up anything, whereupon Pease replied, "Nothing I know of beside myself," and asked Neice if he was going and he replied, "I would like to go," and while they were walking down the platform towards the place where it was necessary to go to take the freight train, a train No. 92 on the Chicago, Burlington and Quincy Railroad going south hit the deceased and injured him, from which injuries he shortly thereafter died.

Counsel for appellants insist that the verdict of the jury and judgment of the court are contrary to the law and the evidence in the case, and that the judgment

should be reversed, and claims, first, that the court erred in admitting incompetent and improper evidence, in this, that Maude Neice was permitted to testify to a conversation between herself and her husband at the time he was leaving his home and while dressed in his working clothes, with lantern in hand, ready to start, he told his wife that he was going to Roodhouse and for her to come the following Thursday, and that he was going to take the train from Venice and that he was going to Roodhouse to take a position which had been given him a few days previous.  Counsel insist that these being declarations out of the presence of the defendants and made from one to two hours before the injury, that they are no part of the *res gestae* and should be excluded.  We cannot agree with counsel in this contention.  Whenever a declaration is made explanatory of an act and in connection with the act it is admissible.  The case of Chicago and Eastern Illinois R. R. Company v. Chancellor, 165 Ill. 438, fully sustains this doctrine and cites with approval an Ohio case in which a witness was permitted to testify that on the morning defendant left his hotel he said to witness, who was a clerk, that he was going to Collins; he was injured while on his way to the train, and the court says, that declarations thus made are part of the act itself, and the Supreme Court of Illinois, following the reference to this case says: "Where the evidence shows the party is about to start on a journey, from common experience we know it is usual and natural that something is said by the party relating to the departure, and of a character indicative or explanatory.  For such declarations to be admissible in evidence as part of the *res gestae* they must be made in connection with an act proven, as in the case above cited."  This was not a narrative of past events and is not within the rule contended for by appellants.

Again, appellants say that the declarations made by the husband to the wife cannot be proven by the wife because she is incompetent under the law to testify to

any conversation between herself and husband. We concur with counsel in this view, and believe the true rule to be that at common law the wife was incompetent to testify as to conversations between herself and husband, and while the statutes of 1872, in regard to evidence and depositions, did to some extent relax this rule in certain specified cases, in 1874, section 5 was amended by adding thereto a proviso to the effect "That nothing in this section contained shall be construed to authorize or permit any such husband or wife to testify to any admissions or conversations of the other, whether made by him to her or by her to him, or by either to third persons, except in suits or causes between such husband and wife." Commenting upon this statute and its effect upon the competency of a spouse to testify to the conversation or admissions of the other, our Supreme Court in the case of Goelz v. Goelz, 157 Ill. 33, says, in reference to this amendment: "This was a recognition and re-enactment of the above mentioned rule of common law, based on public policy, but confining its operation to cases other than suits or causes between the husband and wife." And in this case the court explained the former decisions of Deniston v. Hoagland, 67 Ill. 265, and Galbraith v. McLain, 84 Ill. 379, which are referred to by counsel for appellee herein. Counsel for appellee, however, insist that appellants cannot take advantage of this for the reason that the objections made to the admissibility of the evidence were not specific, and the motion to exclude was not limited to the declarations but included the whole of the evidence of Maude Neice. Waiving this question, however, we are of the opinion that the testimony of Maude Neice as to the material declarations of her husband to her were proven by other witnesses, and that the appellants were not prejudiced by this error. It was shown by the evidence that the deceased was seen on his road towards Venice, and that he actually arrived at Venice, and there stated, without objection, that he was going to Roodhouse; and

we think all of the evidence, except that with reference to her declaration to her husband, was proper, and cannot say that there was such error in the admissibility of this testimony as to require a reversal of this case.

It is next contended by counsel for appellants that the deceased was a trespasser, and for that reason plaintiff is barred of her right to recover, and this is the crucial question in this case. We have been referred to many cases by counsel holding that where a party by some stealth or fraud actually procures passage upon a railroad train, that such parties are trespassers. There are also many cases holding that where persons, for their own convenience, travel upon the right of way of a railroad company, are trespassers, and that the railroad company owes no duty to such trespassers, except not to wantonly injure them, but as we view the facts in this case it does not fall within the rules laid down by either of such classes. In this case, the defendant maintained a depot and platform for the convenience and use of any and all persons having or desiring to transact business with the company, or its agents, or to go there for any legitimate purpose, and it is said by the Supreme Court in the case of I. C. R. R. Co. v. Hammer, 72 Ill. 347: "Depot grounds and passenger houses are not strictly private property. They are places where persons may resort without permission, for the purpose of transacting business with the company, or with the employes of the company, or for the purpose of meeting friends or others arriving on trains, or to see others depart, and to pass over the same in going from one part of the city to another. Such grounds are made quasi public, by the general use to which they are appropriated." And in the same opinion the court again says: "When they permit the people to pass over their grounds, and invite the public to transact business with them on these grounds, they thereby tacitly license persons to come upon and pass over them, and persons do not become trespassers by

doing so in a proper manner. But it is otherwise with their right of way and ground outside of and away from their depot grounds, and beyond the limits of cities, towns, villages and their depot grounds. In such places, the people or individuals have no right to travel. The people are not invited to come there, nor have they any right to go on their tracks or right of way at such places.''

And again in the case of James v. I. C. R. R. Co., 195 Ill. 327, the court further says: ''It is true that we have held in a number of cases that railroad stations are quasi public places, and that the public, for certain purposes, are invited there and that they are not trespassers when they go there; but no case is cited, and we think none can be found, in which it has been held that the railroad tracks adjacent to a railroad station are public places or such places as the public are invited upon or have a right to be, unless it be shown that it was for some purpose connected with the business between such parties and such railroad company or in company with some person having business with such company. In other words, we do not understand the law to be that because a railroad company maintains a depot or station along its line it thereby invites loiterers or persons having no business with it to go from the platforms of the station and travel upon or across its tracks for their individual convenience and upon their individual business in no manner connected with such railroad.'' We think the courts make a clear distinction as to the rights of persons about the depot, and its connecting platforms, and persons on the right of way away from the depot, and of the duties of railroad companies to look out for persons in and about depot grounds, and where people are liable to be more than in and about private places in and along their railroad right of way.

It is claimed, however, by counsel for appellant that the reasonable and only inference to be drawn from the testimony in this case, and from the circumstances

is, "That if Neice went to the depot for the purpose of obtaining information with reference to being carried, and to be carried, and was standing upon the platform waiting to take passage, which undoubtedly is a fact, he was there seeking information for an unlawful purpose and to be carried in an unlawful manner." We cannot say as a matter of law that such was the purpose of Neice in entering upon the platform in company with Pease. It was a question of fact as to what his purpose was, and this question was for the jury to determine, and cannot be determined by this court, unless we would have to say that the evidence and circumstances were manifestly such as to show that he was there for an unlawful purpose. Counsel for appellants recognize this doctrine in submitting this and kindred questions to the jury by its first, second and sixth instructions; but aside from this, there appears to have been no one at the depot that would be better calculated to give him better information with reference to riding upon this freight train than the conductor of the train, and if he desired to ride upon the freight train, even though he had not procured a ticket, he certainly had the right to go upon the grounds of the defendant for the purpose of ascertaining whether or not he could ride upon this train, without becoming a trespasser, if he was in good faith seeking such information, and this too was a question for the jury.

It is also contended that he was a loiterer about the depot and was attempting to steal a ride. Without going into the evidence upon these questions, they certainly were questions for the jury to determine and were properly submitted to the jury under instructions of the court.

As to the proposition that he was chargeable with notice that this train did not carry passengers, we do not believe that we are warranted in saying as a matter of law that he was chargeable with such notice.

The evidence did not disclose that he had any special notice of the matter. His connection with the railroad company heretofore was in an entirely different capacity. Rules and regulations by which it is claimed freight trains were not allowed to carry passengers were posted up in the depot, but there is nothing to show that he had any knowledge whatever of them, and under the circumstances we do not feel that we can say as a matter of law that he had notice that this train did not carry passengers.

The question as to whether or not the "deceased knew that said train was a freight train and that he had no reason to believe that he could rightfully take passage upon said train to Roodhouse, and he was not rightfully upon said tracks but was a trespasser" was submitted to the jury as a question of fact to be determined by it by appellants' thirteenth instruction.

Weber street abutted on to the Wabash railroad as above described, and was connected by walks and platforms with appellants' depot, and this was a thoroughfare used by many people in passing to and from Weber street, and so far as the evidence discloses, without objection upon the part of the appellants, and we think that under the facts as they appear from the evidence in this case, that it was a question for the jury to determine whether plaintiff was a trespasser or rightfully on defendants' property. C. B. & Q. R. R. Co. v. Mirowski, 179 Ill. 77.

Criticism has been made by counsel for appellants upon some of the instructions given by appellee. We have examined these instructions and do not think there is any merit in the criticism. We have also examined the refused instructions of appellants and are of the opinion that these are properly refused by the court.

Criticism is also made upon the statement of counsel to the jury during the argument of the case. The court, however, sustained the objection made by counsel for

appellants and directed the jury to disregard the statements, and we are not able to say that the statements were very harmful in the light of the testimony and circumstances surrounding this case.

Practically every question now urged by counsel for appellants for the reversal of this case was submitted to the jury to be determined by it, including the questions of negligence of the defendants and due care of the plaintiff, and we think that the jury were fully and liberally instructed in behalf of the appellants, and the jury having determined all of these facts in behalf of the appellee we cannot say that the verdict of the jury is manifestly against the weight of the evidence and the judgment of the lower court is affirmed.

*Affirmed.*