HOYER v. CENTRAL R. CO. OF NEW JERSEY.

(Circuit Court of Appeals, Second Circuit.   December 11, 1918.)

No. 103.

1. RAILROADS ⬤⟶355(1)—TRESPASSERS ON TRACK—LIABILITY FOR INJURY.
   Railroad tracks, except at public crossings or on highways, are the exclusive property of the railroad company, and persons who go upon such tracks without permission are trespassers.

2. RAILROADS ⬤⟶355(5)—PERSONS ON TRACK—EMPLOYÉS IN COURSE OF DUTY.
   Persons in contractual relations with a railroad company whose work requires them to go on the tracks while so employed are not bare licensees.

3. RAILROADS ⬤⟶358(1)—PERSONS ON TRACK—"LICENSEE."
   A "licensee" on a railroad's premises is a person who, being neither a passenger, servant, nor trespasser, nor standing in any contractual relation to the company, is expressly or impliedly permitted by the railroad company to come on its premises for his own convenience or gratification.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Licensee.]

4. MASTER AND SERVANT ⬤⟶88(7)—INJURY TO EMPLOYÉ ON TRACK—NEGLIGENCE.
   A railroad company held not chargeable with negligence for killing of a brakeman employed in its switchyards who, after quitting work at night after dark, instead of leaving the yard at a nearby street, walked down a dead track terminating at a bumper, and when a mile distant was struck by a switch engine on its customary trip to the bumper to change crews; it being shown that the engineer stopped his engine as quickly as possible after decedent was seen, that there was a safe walk beside the track, and it not appearing that the company had knowledge that the track was used as a walk.

5. RAILROADS ⬤⟶359(1)—DUTY TOWARD PERSONS ON TRACK—TRESPASSERS.
   The general rule is that a railroad company is under no duty to exercise active vigilance to provide against injury to a trespasser on its tracks until his presence is known, when it is bound to exercise reasonable care to avoid injuring him.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Julius H. Hoyer, administrator of Henry Hoyer, deceased, against the Central Railroad Company of New Jersey. Judgment for defendant, and plaintiff brings error.   Affirmed.

The action is brought under the federal Employers' Liability Act April 22, 1908. c. 149, 35 Stat. 65 (Comp. St. §§ 8657–8665), which act gives a cause of action for damages to the personal representative of a person employed by a common carrier in interstate commerce whose death is due to an accident while he is so employed.

The decedent was killed on defendant's tracks on October 19, 1916.

The action is for the benefit of the surviving widow, children, or next of kin or dependents of such employé.

The statute authorizes the action to be brought in a court of the United States in the district in which the defendant shall be doing business at the time of the commencement of the action.

The plaintiff asks for judgment in the sum of $50.000.

The court at the close of the case directed the jury to return a verdict for defendant.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John C. Oldmixen, of New York City, for plaintiff in error.

De Forest Bros., of New York City (Robert Thorne, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The negligence alleged in the complaint is that the defendant at the time this accident occurred was moving this train on the track without any signal or warning to persons that might be on the track and without adequate lights.

The decedent was a brakeman employed by defendant in its switching yards in Newark, N. J., and had been so employed for three years.

It is conceded that the last work he was engaged in was the handling of cars containing freight going out of the state of New Jersey. He had been working with a drill crew in the freightyards that had handled interstate freight. He had completed his work for the day at 6 o'clock in the afternoon, and was on his way out of the freightyard, and supposedly on his way home, walking on the dead track when he was run over and killed by one of defendant's engines at about 6:30 p. m. He was walking with his back to the engine, and the engine was not sounding a whistle or ringing its bell and was running about eight miles an hour.

It appears that, in order to get out of the yard in which he had been at work, the deceased had only to walk about a block, when he would have reached a public street, where he might have taken a trolley car or proceeded on foot to his home. But he chose to pursue a different course and walked on the dead track, the point of the accident being about a mile from where he had been working. There were two live or high speed tracks adjoining the track upon which the deceased met his death, and these two tracks ran parallel to the dead track. While this was called a "dead" track, this did not mean a track not in use, but merely a track having a switch to other tracks at one end only, and a bumper at the other end. The track was in more or less use for switching purposes, and every night shortly after 6 o'clock it was the custom for the drill crew to run down on the drill engine to the bumper end of this track where the day crew was relieved and the night crew went on duty and took the engine back over the same track and into the yards to carry on the drilling and switching of cars through the night. The defendant was run down by an engine on one of its regular trips.

There was a path at one side, and entirely away from the track, which was a level concrete surface about two feet wide and along the top of a retaining wall which made a space of some five feet in width. And there is some testimony showing that there was a cinder path about two feet wide which ran by the side of the track and which was sometimes used to some extent in the mornings by employés engaged in the factories in that neighborhood.

The night of the accident was dark and is described as "a black, drizzly, rainy night," and "you couldn't see your hand before you hardly." Three of the switching crew were standing on the running

board in front of the engine. They had their lanterns which were lighted. The engineer was in his cab running his engine and looking ahead. The fireman was in the cab on his own side and looking out on the track. The light on the engine was lit but was the standard light with which a drill engine is regularly equipped. It was not intended to and did not reflect the light along the track ahead of the engine so as to disclose objects on the track. The tracks at the place of the accident were straight.

Two of the men on the running board discovered the deceased at the same time, and both shouted a warning, and one of the men swung his lantern as a signal. The deceased when first seen was about 15 feet ahead of the engine. Although the engineer was in the cab looking ahead, he had not seen him until he struck him. Neither had he seen his companion, who was walking beside him, but on the cinder track, and who was also killed. The engineer as soon as he heard the shouts and got the signal immediately applied the brakes and did everything he could to stop the engine and did in fact stop it within its own length. It was too late, as the deceased had been struck down, and his body was found cut in two, one half being inside and the other outside the track. And just as the engine struck him a passenger train passed on the adjacent track.

We have searched the record to see whether the defendant had reason to anticipate that at the time this accident occurred there might be persons walking on this so-called "dead" track. We find no evidence to support any such theory. There is no testimony showing that employés or the general public were in the habit of walking along this track in the evening, or that the railroad permitted or licensed people so to use it. The freight conductor who testified to this said that every morning he would see from two to six persons walking up and down that path, but that he had only seen them in the mornings and that he had never seen them doing it in the evenings.

[1-3] It is the law that railroad tracks, except at public crossings or on highways and streets, are the exclusive property of the railroad company. Persons who go upon such tracks, except at such places without the permission of the company expressed or implied, are trespassers, and, subject to certain qualifications, are there at their own risk. Persons who go upon the tracks by reason of contractual relations with the company are not trespassers. Persons in such contractual relations whose work requires them to go on the tracks are while so employed not bare licensees. Holmes v. North Eastern R. Co., L. R. 6 Exch. 123; Froehlich v. Interborough Rapid Transit Co., 120 App. Div. 474, 104 N. Y. Supp. 910; Conlan v. New York Central, etc., R. R. Co., 74 Hun, 115, 26 N. Y. Supp. 659, affirmed, 148 N. Y. 748, 43 N. E. 986; Watts v. Richmond, etc., R. Co., 89 Ga. 277, 15 S. E. 365; Turner v. Boston, etc., R. Co., 158 Mass. 261, 33 N. E. 520. A "licensee" on a railroad's premises is said to be a person who being neither a passenger, servant, nor trespasser, nor standing in any contractual relation to the company, is expressly or impliedly permitted by the railroad company to come on its premises for his own convenience or gratification. See 33 Cyc. 756.

[4] In this case the decedent, it is true, was a servant of the company. His labors for the day, however, were concluded, and his duties did not require him to be on the track at the time of the accident. He might have walked a block from where his work stopped and made his exit from the yards, instead of walking a mile in the direction he chose to pursue. He might have walked between the dead track and the live track at the right, there being a distance of ten feet between the two tracks. He might have walked on the cinder path to the left and would have been safe if he kept far enough away from the rails. And he might have walked on the path along the retaining wall. But he chose to walk on the track itself. He was not there by the express or the implied invitation of the company. The evidence does not show that he was even a licensee. He was a trespasser upon the tracks and was not taking ordinary care for his own protection. It was a dangerous place, and the danger was enhanced by the character of the night and of the storm.

[5] The general rule is that a railroad company is under no duty to exercise active vigilance to provide against injury to a trespasser on its tracks until his presence is known. Sheehan v. St. Paul, etc., R. Co., 76 Fed. 201, 22 C. C. A. 121; Cleveland, etc., R. Co. v. Tartt, 99 Fed. 369, 39 C. C. A. 568, 49 L. R. A. 98; McCreary & Boston, etc., R. Co., 156 Mass. 316, 31 N. E. 126; Nolan v. New York, etc., R. Co., 53 Conn. 461, 4 Atl. 106; James v. Illinois Central R. Co., 195 Ill. 327, 63 N. E. 153. It is bound only to abstain from wanton, reckless, or willful injury. Grand Trunk R. Co. v. Flagg, 156 Fed. 359, 84 C. C. A. 263. Its duty is to exercise reasonable care to avoid injuring him after discovering his peril. Texas, etc., R. Co. v. Modawell, 151 Fed. 421, 80 C. C. A. 651, 9 L. R. A. (N. S.) 646; Tutt v. Illinois Central R. Co., 104 Fed. 741, 44 C. C. A. 320.

The injury which resulted in the decedent's death was not inflicted wantonly, recklessly, or willfully. After discovering his presence on the track, the defendant did everything in its power to avoid his death. There is no evidence in the record that the defendant knew that any class of persons were accustomed to walk on the track at the hour when this accident happened or at any other hour, although there is some evidence that in the mornings there were some trespassers on the cinder path along the tracks. But walking on the cinder path in the morning and walking on the track at night after dark are widely different transactions. And if persons were in fact licensed to walk upon the path that gave them no right to walk on the track. So far as walking upon the cinder path is concerned, it would seem that those who do so are trespassers. In Shearman & Redfield on Negligence (6th Ed.) vol. 2, p. 1227, it is said that—

"Mere failure to prevent trespasses continually occurring at a particular place has sometimes been construed into acquiescence in such use by the company and as converting a trespasser into a licensee. Such, however, is not the rule sanctioned by reason or weight of authority."

It is said that the deceased was at the time of his death engaged in interstate commerce although he had stopped work and was on his way home. The Supreme Court has held that leaving the carrier's

yard· after his day's work in interstate commerce is a necessary incident of the work and partakes of its character; that a workman in so doing is but discharging a duty of his employment and is still engaged in interstate commerce. Erie R. R. Co. v. Winfield, 244 U. S. 170, 173, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662 (1917). See, too, North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 260, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159. We need not inquire whether a person who does not take a short and safe and direct route out of the yards, but elects to pursue instead a course which leads him a mile further away from the point where he might have left the yards and reached his home, can be said still to be engaged in interstate commerce; for upon the facts in this record it is not material whether the defendant was engaged in interstate commerce or not. The Employers' Liability Act does not make a common carrier by railroad engaged in interstate commerce an insurer of its employés. The liability it imposes is for injury or death resulting in whole or in part from its negligence. And in this case the evidence shows, as we have seen, no negligence on the part of the defendant.

Judgment affirmed.